EDWIN L. WHEELER, Appellant, v. HARRISON B. CHUBBUCK, Appellee.

APPEAL FROM LIVINGSTON.

When the General Assembly intends that a law shall take effect sooner than the period fixed by the Constitution, such intention must be expressed in a clear and unequivocal manner; such intention cannot be aided by any sort of intendment or implication.

In order to take an act out of the constitutional provision, which directs when laws shall come in force, the legislature should direct that the act, as a whole, shall come in force, and it is not sufficient, to that end, that certain parts of it might be construed separately, as coming earlier into effect.

THIS was a suit brought by Chubbuck against Wheeler, to recover a penalty for suffering hogs to run at large in Livingston county, contrary to the provisions of an act entitled "An act to prevent sheep and swine from running at large in Henry, Will and Livingston counties," approved January 27, 1853.

There was evidence tending to show, that in the month of March, A. D. 1853, and at other times, defendant permitted his hogs to run at large in Livingston county.

The court instructed the jury, at the request of plaintiff, if the jury believe, from the evidence, that the defendant was the owner of the hogs and pigs in question, and that the defendant was a resident of the county of Livingston, between the 1st day of March, 1853, and the 1st day of November, 1853, and any time between said days, being such resident, permitted his hogs to run at large in said county, then they will find for the plaintiff, five dollars for each hog and pig they believe, from the evidence, was so permitted to run at large.

This cause was heard before LELAND, Judge, and a jury, at April term, 1855, of the Livingston Circuit Court. Verdict and judgment for fifty dollars.

The defendant below prayed this appeal.

GLOVER and COOK, for Appellant.

BUSHNELL and GRAY, for Appellee.

CATON, J. An act entitled " An act to prevent sheep and swine from running at large in Henry, Will and Livingston counties," approved January 27, 1853, provides " That from and after the first day of March next, it shall not be lawful for any person or persons, possessor or possessors of any sheep and swine, to allow them to run at large within the counties of Henry, Will, Livingston and Lake," etc., and imposes a penalty for its violation.

The court instructed the jury, that if the defendant had violated the provisions of the act, at any time between the first day of March, and the first day of November, 1853, he was liable to the penalty.

The question is, whether the law took effect and become in force before the expiration of sixty days from and after the close of the session at which it was passed. We think it ·did not. The 23rd section of the 3rd article of our constitution, declares: " And no public act of the General Assembly shall take effect, or be in force, until the expiration of sixty days from the end of the session at which the same may be passed, unless, in case of emergency, the General Assembly shall otherwise direct." The object of this provision of the constitution no doubt was, to enable those who are to be governed or affected by a law, to become informed of its provisions, while at the same time, in cases of emergencies, a discretion is vested in the legislature to dispense with this provision of the constitution, and direct that the law shall sooner go into operation. It may not be denied that this discretion cannot be revised by the court, and that the General Assembly is the sole judge of the emer-

Wheeler v. Chubbuck.

gency, which shall induce them to anticipate the constitutional period when a law shall go into operation. But such direction must be made in a clear, distinct and unequivocal provision, and cannot be helped out by any sort of intendment or implication. And such is the unequivocal understanding of the legislature, as evinced by the entire legislative history under this constitution. Wherever it is designed that a law shall go into force before the expiration of the sixty days, we universally find a separate clause at the end of the act, of the following purport: " This act to take effect and be in force from and after its passage." I find one hundred and twenty-seven acts, passed at the same session of the legislature, terminating with substantially the same distinct and unequivocal clause. There is one, declaring by a separate and distinct clause also, at the end of the act, that it should take effect on the first day of August. There are two in which it is declared, in a similar way, that they should take effect on the first day of April, and two others in which it is also declared in a similar way, that they should take effect on the first day of March, the very day on which it is insisted that this act took effect. This, at least, serves to show what is the universal practice of the legislature, when they deem an act of sufficient emergency to take it out of the constitutional provision. In the law in question there is no distinct clause, declaring when the act, as a whole, should take effect, and become an operative law. It is true that the act says, that after the first day of March, next, certain acts should not be done, but whether the word *next* refers to a time succeeding the final passage of the bill, or the approval by the governor, or the time fixed by the constitution for the law to take effect, the legislature did not say. In order to take an act out of the constitutional provision, the legislature must direct that the act, as a whole and entirety, shall take effect at a different time; and it is not sufficient, that certain parts of it might bear a construction which would, taken separately, give those parts effect at an earlier period. The legislature did not direct that this act should become an operative law, before the time fixed by the constitutional provision quoted.

The judgment of the circuit court must be reversed, and the cause remanded.

*Judgment reversed.*