## THE BOARD OF SUPERVISORS OF IROQUOIS COUNTY *et al.*
### *v.*
### WILLIAM F. KEADY *et al.*

1. STATUTES — *when they take effect.* An act of the legislature for the removal of a county seat provided for taking the vote of the citizens of the county, on the 17th of March, 1863, at which time the legislature had not adjourned. *Held,* this provision did not comply with the constitutional requirement, that, in order that a law shall take effect before the expiration of sixty days after the end of the legislative session, the legislature must so direct. The law had not gone into effect when the vote was taken.

APPEAL from the Circuit Court of Iroquois county; Hon. CHARLES R. STARR, Judge, presiding.

This was a bill in chancery by the appellees against the appellants to enjoin them, as supervisors of Iroquois county, from taking further measures for the removal of the county seat.

On the 11th February, 1863, the legislature passed an act, "to enable the people of Iroquois county to vote for the removal of the county seat." The first section of the act is as follows: "That, on Tuesday, 17th day of March, A. D. 1863, an election will be held in the county of Iroquois, in the State of Illinois, at the several places of holding elections, for the purpose of determining whether the present seat of justice of said county shall be removed and relocated."

On the 17th March, 1863, an election was held in pursuance of said act, which resulted in favor of removal by a majority of about 330 votes. After such election the county clerk of Iroquois county, called a session of the board of supervisors to assemble on the 23d March, 1863, for the purpose of locating the county seat, in pursuance of said act and said election.

On the day fixed for the meeting of the board of supervisors, William F. Keady, Cyrus B. Barnes, and Louis Throup, three of the citizens of said county, filed their bill and obtained a preliminary injunction which, at the September term, 1863, was made perpetual, and the defendants appealed.

Messrs. RANDALL & FULLER, LELAND & BLANCHARD, and ROFF & DOYLE for the appellants.

Mr. CHESTER KINNEY and Mr. JAMES FLETCHER for the appellees.

Mr. JUSTICE BECKWITH delivered the opinion of the Court:

The fifth section of article seven of the constitution provides " that no county seat shall be removed until the point to which it is proposed to be removed shall be fixed by law, and a majority of the voters of the county shall have voted in favor of its removal to such point."

This provision of the constitution contemplates the passage of a law authorizing an election to be held, and prescribing the time when, and the place where it shall take place; the manner in which it shall be conducted and its results made known. Without such a law there would be no time for holding it, no places for receiving votes, no persons authorized to receive them, and no mode of making the result known; the proceedings would be those of an unauthorized assemblage.

Before the passage of the act of February 11, 1863, there was no law authorizing such an election to be held by the voters of Iroquois county. An election was held on the 17th day

of March, 1863, and if the act mentioned had not then become a law, it is evident that no such vote has been given in favor of the removal of the county seat, as the constitution requires.

Section twenty-three, of article three of the constitution, declares, " and no public act of the general assembly shall take effect or be in force until the expiration of sixty days from the end of the session at which the same may be passed, unless in case of emergency the general assembly shall otherwise direct." The session of the general assembly which passed the act referred to had not terminated when the election was held, and the act could not become a law until the expiration of sixty days from the end of the session, without an express direction of the legislature to that effect. Inasmuch as the act directs an election to be held on the 17th day of March, 1863, it is insisted that it must be deemed a direction of the legislature that the provision which authorizes an election should take effect on or before the time when the election was to be held. The same rule of construction would imply directions, that the provisions which require notice to be given, should take effect at least twenty days before the time when the election was to be held; that the provisions which fix the place to which the removal was proposed to be made, should take effect before votes were cast in favor of the removal; that the provisions which prescribe the manner in which the votes shall be counted and the result made known, should take effect immediately after the election; that the provisions which require the board of supervisors to procure or erect suitable public buildings for the public offices of the county, and for holding the county and circuit courts of the same, should take effect as soon as the result of the election was known; and that the provisions which require the records and offices of the county to be removed to the place in favor of which a majority of the voters should vote, and the county and circuit courts to be held at such place, should take effect when the necessary arrangements were made.

The court is not aware of any rule by which an act of the legislature, regulating the rights and duties of citizens, becomes

a law, piece-meal, upon the performance of acts *in pais*, known only to a limited number of persons, for the purpose of subserving the exigencies of the inhabitants of a particular locality.

In *Wheeler* v. *Chubbuck*, 16 Ill. 361, it was held, that "in order to take an act out of the constitutional provision, the legislature must direct that the act as a whole and entirety shall take effect at a different time, and that it was not sufficient that certain parts of it might bear a construction which would, taken separately, give those parts effect at an earlier period." The court on that occasion said, that "the direction must be made in a clear, distinct and unequivocal provision, and could not be helped out by any sort of intendment or implication." The object of the constitutional provision was to enable those who were to be governed or affected by a law, to become informed of its provisions; and it has been uniformly construed by the legislature as construed by this court. This construction commends itself to our judgment, and we are unable to perceive any reason for relaxing a rule so well settled. As the act of February 11, 1863, had not become a law when the election was held under it, there was no point fixed by any law then in force to which it was proposed to make the removal, and the voters did not cast their votes in favor of a removal to any point fixed by law. In disposing of the main point in controversy, the court desires to be understood as not expressing any opinion as to the mode in which the question is brought before us. If the complainants had taxable property at the time they commenced their suit, they may not have had any when the next assessment, for the purposes of taxation, was made; and if they had none when the acts complained of were about to be committed, they might have been large tax payers when those acts would produce their result in increased taxation. The liability of the complainants to injury consisted in their belonging to a community in which every person was subject to pay taxes of all he possessed. An act of administration likely to produce taxation, is not, ordinarily, a matter of private or individual concern; it is an affair altogether public, and the appro-

priate remedial process against an abuse of administrative power, tending to taxation, would seem to be a proceeding in behalf of the State. *Roosevelt* v. *Draper*, 23 N. Y. 318; *Doolittle* v. *Supervisors of Broome County*, 18 id. 155; *Davis* v. *The Mayor of New York*, 2 Duer, 663, in which the English cases are cited.

From an expression in the opinion of the court in *The People ex rel. Mitchell* v. *Warfield*, 20 Ill. 159, it has been supposed that a suit like the present one might be maintained. The court in that case refused to award a mandamus requiring the defendant to do an act which he was restrained from doing by an injunction issued by the Circuit Court in a suit in which no question was made in regard to who were proper parties.

We consider the question as undetermined in this State, and as the plaintiffs in error have waived its consideration, we are not required to reverse the judgment on that ground alone.

The decree of the court below is, therefore, affirmed.

*Decree affirmed.*