(*Circuit Court of Cook County.   In Chancery.*)

## People ex rel. Charles H. Reed, State's Attorney,

### vs.

## John G. Grindele, County Clerk, et al.

(April 26, 1870.)

1. EQUITY—JURISDICTION—PREVENTION OF DAMAGE TO PUBLIC—PROPER PARTY COMPLAINANT. Equity has jurisdiction to prevent by injunction, at the suit of the state's attorney on behalf of the people the delivery by the clerk of the circuit court, of books upon which assessment for the current year is to be made, to rival sets of claimants to the assessor's offices of Chicago, because of the irreparable damage to the public which would necessarily result therefrom.

2. STATUTES—CONSTITUTIONALITY—EMBRACING TWO SUBJECTS. A statute does not embrace two subjects simply because one section relates to the manner of levying assessments and the other to the term of office of assessors.

3. SAME — CONSTITUTIONALITY — CHANGING TENURE OF OFFICE. Where there is no constitutional provision in regard to the tenure in office of an officer, the legislature can extend or shorten such tenure as it may see fit.

Bill for injunction. Heard before Judge Williams. The facts are stated in the opinion.

*Messrs. Atwood* and *S. A. Irvin,* for complainant.

*Gen. R. W. Smith,* for respondents.

WILLIAMS, J.:—

Three bills have been filed in this court by the above-named complainant, acting on behalf of the people of the state against the county clerk, to restrain him from delivering to certain persons, claiming to be assessors of the towns of North, South and West Chicago, the books upon which the assessment of the respective towns are to be made for the current year.

The facts alleged in the bills are substantially the same, so far as they become necessary to the understanding of the questions passed upon in this case. They are as follows: That in November, 1868, certain persons were elected assessors of the towns of North, West and South Chicago, who were duly qualified and entered upon their duties as assessors of each of those towns; that in March, 1869, the legislature of this state passed an act extending the term of said assessors to November, 1870, and making the elections of assessors biennial thereafter, instead of annual, as they had theretofore been; but that, notwithstanding such act of the legislature, an election was in fact had in November, 1869, and Josiah A. Bross, J. B. Murray, and Charles Haussner, were elected assessors, and that the clerk of the county court is now preparing and is about to deliver to each of the parties last-named, as well as to the assessors elected in 1868, books upon which they may severally make the assessments for the current year.

To each of these bills a demurrer has been interposed, and the questions raised and argued are, first, whether these suits can properly be brought by the state's attorney in the name of the people; and, second, whether the law passed in 1869 is constitutional.

If the people of the state are likely to receive, in consequence of the proposed action of the county clerk, great and irremediable injury; and if, by the action of this court alone,

such injury can be prevented, then a court of chancery should interpose for their protection. This is not a question of fees between two rival sets of assessors, but it is a matter in which the interests of the public are vitally involved. The state must be permitted to collect its taxes, and the counties and towns to collect theirs, else the whole machinery of government is impeded in its motion, and at last stops for want of the propelling power. That the issuance of two sets of books to two sets of assessors would interfere with the collection of taxes no one can doubt. The tax-payer could not decide which assessment was valid. Both sets of assessors have the muniments of title to their several offices. Both claim to represent the state in its attempts to collect its revenues. And yet one of the parties so professing to act is not an assessor, recognized by the law, and the other is. The action of the county clerk in thus investing two persons with the muniments of office when only one is entitled to exercise its duties, would not only, therefore, involve a great expense in the preparation of a double set of books, but it would give persons an excuse for the non-payment of taxes after they were assessed, and lead to infinite litigation. Under such circumstances there could not fail to be immense loss to the state.

A court of chancery is the only tribunal which can, by its strong arm, effectually and entirely prevent such loss, and the state, represented by its law officer, is the only proper person to invoke the aid of this court, at the present stage of the controversy. At some subsequent period, when their rights were about to be prejudiced, tax-payers might apply to this court or the superior court for protection, but now there can be no adequate remedy, except it can be obtained by the people in the manner they have sought to obtain it by their present bills. *Kerr et al. v. Trego et al.*, 47 Pa. St. 292; *Doolittle v. Supervisors, etc.*, 18 N. Y. 155; *Seely v. Bishop*, 19 Conn. 128; *Board of Supervisors, etc., v. Keady*, 34 Ill. 293.

I can hardly conceive of a case where the interposition of a court of chancery is more immediately demanded than in

the cases now under consideration. That necessity is even greater in a case where the clerk proposes to issue two sets of books to two sets of officers, one of which cannot be authorized by law to act, than if he was about to issue only one set of books, and that to the wrong persons. The uncertainty of the tax-payer would be greater in the former than the latter case. This, then, is clearly a case where a court of equity has not only the right to interfere, but where it becomes its absolute duty to interfere, and decide who are the legal assessors for the respective towns of North, South and West Chicago.

In March, 1869, the legislature passed the following act:

"An act in relation to assessments and assessors in certain towns in Cook county.

"*Be it enacted* by the people of the state of Illinois in the general assembly:

"Section 1. That when the assessors of the towns of North, West and South Chicago, in Cook county, shall in each year have completed the assessment of the property in said towns, they shall respectively give notice, by three days' publication in one of the daily papers of the city of Chicago, that the same is completed, and will be open, at some public place, to be named in said notice, for inspection, correction and revision, for ten days from the first publication of said notice. The present assessors of said towns shall remain in office until November, A. D. 1870, and shall thereafter be elected biennially.

"Sec. 2. This act shall be a public act, and shall be in force from and after its passage."

By that act they not only changed the manner in which the assessors for the respective towns of North, South and West Chicago should give the notices required by law, but they continued the three assessors in office for one year beyond the time for which they were originally elected, and made the elections thereafter biennial instead of being annual as they had been theretofore. It is claimed that this act is unconstitutional for two reasons. First, because it embraces two sub-

34

jects.  Second, because it is virtually an appointment or election by the legislature of an officer within the meaning of the constitution of this state.

But the act does not embrace two subjects in its provisions. It relates only to assessors and assessments, and if this act is void for the reason indicated, so is every act upon the statute book which contains more than one section.  *O'Leary v. Cook County,* 28 Ill. 534.

It was admitted by the counsel for the defendants, upon the arguments of these demurrers, that the legislature might extend the time of an election, and could continue the then incumbents in office until the date of the next general election, but not thereafter.

There is no constitutional provision affecting the tenure of office of assessors, nor even any such office recognized by the constitution.  The legislature could, therefore, abolish the office altogether, and cast the duties upon some other officer, or they could extend or shorten the tenure of office.  It has been decided, in very many cases, that, in the absence of any constitutional limitation or restriction, such was the power of the legislature.  *Taft v. Adams,* 3 Gray, 130; *Connor v. City N. Y.,* 2 Sandf. 355; *Dartmouth College Case,* 4 Wheat. 518,·627; *Butler et al. v. Penn.,* 10 How. 402, 416.

And I know of no case which holds that a legislature, in case they should deem fit to extend the tenure of an office, should be limited by the occurrence of a general election.

The legislature could have made the tenure of office originally ten years instead of one for the assessors in this state, and they have the same power to extend the tenure of an existing office.  The propriety of exercising such a power in any case may well be doubted, especially in a state where the policy of popular elections is so deeply engrafted upon our whole system of government, but the power and the right of a legislature so to act has been settled too often by the adjudication of courts to be now denied.

It is not the first time that such legislation has been had in this state in extending for the then incumbents the terms of their offices, and, though the propriety of such action will

always be questioned and generally will be doubted or denied, the unconstitutionality of it has never, so far as I know, been announced by any legal tribunal. I hold, therefore, that under the law of March, 1869, the assessors elected in 1868 are assessors *de jure* as well as *de facto,* and to them only can the county clerk rightfully deliver the assessors' books. The demurrers to each of the bills will therefore be overruled.