(No. 13091.—Writ denied.)
THE PEOPLE *ex rel.* Alma M. Campe, Petitioner, *vs.* THE BOARD OF REVIEW OF COOK COUNTY *et al.* Defendants.

*Opinion filed December 17, 1919.*

1. TAXES—*tax-payer has no vested right under statutes fixing assessed value.* A tax-payer has no vested right under statutes fixing a certain portion of the actual value of property as the basis for an assessment for taxation, and such basis may be changed by the legislature at any time.

2. SAME—*amount of taxes and rate of taxation are within control of legislature.* The power to levy taxes is a necessary incident of sovereignty and is possessed by the State without being conferred by the people, and in Illinois the power to tax and to determine the amount of taxes and rate of taxation rests exclusively in the General Assembly, subject only to constitutional limitations.

3. SAME—*power of taxing is not limited to July 1.* The power of the General Assembly to levy taxes or increase taxes is not limited by the constitution or by statute to July 1, and if an assessment for taxation is completed before that time the taxing authorities may thereafter levy such an amount of tax as may then be authorized by law.

4. SAME—*act of 1919 increasing assessed value applies to taxes for 1919 and is valid.* The amendment of 1919 to sections 17 and 18 of the act for the assessment of property, (Laws of 1919, p. 727,) by which the assessed value of property is fixed at one-half the actual value, applies to taxes for the year 1919 and is a valid law.

FARMER, DUNCAN and THOMPSON, JJ., dissenting.

ORIGINAL petition for *mandamus*.

FRANK O. CAMPE, for petitioner.

ROY MASSENA, (EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, CLARENCE N. BOORD, MICHAEL F. SULLIVAN, HAYDEN N. BELL, SAMUEL A. ETTELSON, LEON HORNSTEIN, and TOLMAN, REDFIELD, SEXTON & CHANDLER, of counsel,) for defendants.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Sections 17 and 18 of the act for the assessment of property, as amended in 1909, provided that the assessor should determine the fair cash value of property, which should be set down in one column to be headed "Full value," and one-third part thereof should be ascertained and set down in another column headed "Assessed value;" that the State Board of Equalization in valuing property originally assessed by it should also ascertain and set down in one column the fair cash value to be headed "Full value," and one-third part thereof should be ascertained and set down in another column headed "Assessed value," and that the one-third of the value of all the property so ascertained and set down should be the assessed value for all purposes of taxation, the limitation of taxation and limitation of indebtedness prescribed in the constitution or any statute. In 1919 the General Assembly amended sections 17 and 18 by providing that property subject to taxation should be valued at its fair cash value, which should be set down in a column headed "Full value," and one-half part thereof should be set down in a column headed "Assessed value," which last amount should be the assessed value of the property for all purposes of taxation. (Laws of 1919, p. 727.) At the October term, 1919, by leave of court a petition in the name of the People of the State of Illinois, on the relation of

Alma M. Campe, a resident and tax-payer of the county of Cook, was filed, in which it was alleged that the board of assessors of Cook county for the current year 1919 had assessed all property, real and personal, subject to assessment and had ascertained and determined the fair cash value of such property, which was set down in columns headed "Full value" and had set down one-third part thereof in other columns headed "Assessed value;" that the assessment books had been delivered to the board of review; that the board of review and members thereof were proceeding to review and revise the assessment by ascertaining and determining one-half part of the value of each item or description of property and setting the same down in columns headed "Total assessed value as corrected by board of review, 1919;" that the petitioner appeared before the board of review on August 22, 1919, and requested the board and the members thereof to ascertain, determine and set down as the assessed value of all items or descriptions of property the one-third part of the fair cash value thereof as the assessed value, which the board of review refused to do. The board of review and the individual members of the board were made defendants to the petition, and the prayer of the petition was for a writ of *mandamus* commanding them to set down in the assessment books, in the appropriate column or columns, one-third part of the fair cash value of all property as the assessed value. The petition was answered with admissions that the board of assessors set down in the assessment books one-third of the fair cash value as the assessed value of property and the change made by the board of review from one-third to one-half as the assessed value. The answer alleged that the board of assessors did not complete the work of assessment before July 1, when the amendatory act took effect, and did not complete the same until August 18, when it made a return to the board of review as of August 1, and that the General Assembly at the same session, and contemporaneously with the pas-

sage of the act amending sections 17 and 18, passed sixty-six other acts reducing the rate or per cent which taxing bodies might levy, so that the amount of revenue produced by the limitations so fixed would be the same as before the amendment. The answer was demurred to and the cause argued and taken for decision on the demurrer. The writ was denied, and the reasons for the decision were to be stated in an opinion thereafter to be filed.

The legal questions raised by the demurrer to the answer and which were argued by counsel are: (1) Whether the General Assembly intended by the amendatory act that the change in the proportion of the value of items of property ascertained to be set down as a basis of assessment should apply to the taxes for the year 1919; and if so, (2) whether the General Assembly had the power to make such change for that year.

It is quite evident that the General Assembly intended the amendatory act to take effect, as provided by the constitution, on July 1, 1919, and to be effective in that year as to the proportion of the value of property assessed as the basis for taxation. The act did not provide that it should take effect at some time in the future, as is done by the General Assembly when that is the intention, and by force of the constitution it became the law of the State on July 1, 1919. Any different conclusion would impute to the General Assembly an intention to destroy uniformity of taxation for the current year in violation of the constitution. It cannot be denied that the act would apply to assessments made after July 1, and all assessments of track, rolling stock and capital stock of railroads and assessments of capital stocks of corporations by the State tax commission, as well as original assessments of omitted property by the board of review, would be on a different basis from assessments made by local assessing officers before July 1. Neither can there be any doubt that the sixty-six other acts reducing the rates of taxation would take effect for the

year 1919, which on the basis of one-third would reduce the taxes so as to leave municipalities and governmental agencies without means to perform their functions. An inference of an intention to produce a result so disastrous to the public would not be authorized.

The claim of right to the writ rests on the proposition that in contemplation of law the assessment of property for the year 1919 was completed before July 1, although, as alleged in the answer and admitted by the demurrer, it was not, in fact, completed until long afterward. There is nothing in any statute upon which to base such a proposition, but the valuation and assessment of property for taxation consist of a series of acts by different taxing authorities. First, the assessor or board of assessors ascertains and determines the value of property, and this is followed by a revision by the board of review, which may raise or reduce such value and also make an original assessment of omitted property, and the final act as to such assessments is equalization by the State tax commission, and in addition thereto, original assessments of property of corporations by that commission. Until all this has been done the assessment is not complete and the assessed value of property is not finally determined. While the statute requires the board of review to meet on the third Monday of June, it cannot revise the assessment by the board of assessors on that day, because that board is required to revise the assessment of personal property and correct it on the same day, and thereafter the board of review must permit an aggrieved taxpayer to make complaint up to and including August 1. The board of review cannot certify to the assessment, as required by the statute, until after the time for a hearing has expired, and the answer alleges that the board of review did not complete its work until August 18. The board of review is required to certify to the correctness of the assessment after it has increased or reduced it, either as an entirety or with reference to the property of an indi-

vidual or as to original assessments of omitted property. After that, both the duty of equalization and the original assessment of certain classes of property are committed to the State tax commission.

The question, however, when an assessment is made, either in contemplation of law or as a matter of fact, is beside the issue here and of no importance in determining it, because a tax-payer has no vested right under statutes fixing a certain portion of the actual value of property as a basis for assessment. By the act of 1909 above mentioned, the proportion of the value of the property was changed from one-fifth to one-third, resulting in an increase of taxes for hard roads, and the court held in *People* v. *Cairo, Vincennes and Chicago Railway Co.* 247 Ill. 327, *People* v. *Chicago and Eastern Illinois Railroad Co.* 248 id. 118, and *People* v. *Cairo, Vincennes and Chicago Railway Co.* 249 id. 53, that the change did not in any manner affect the validity of the tax.

Regardless of any constitutional question, there was no showing of any right to the writ, because taxes are only levied after July 1 of each year, and the amount of taxes and rate of taxation are exclusively for the General Assembly and may be increased or decreased at its pleasure. The power to levy contributions by way of taxation for the support of government is a necessary incident of sovereignty and is possessed by the State without being expressly conferred by the people. It is necessary to the very existence of government, and in this State the power is vested in the General Assembly, restricted only by the provisions of the State and Federal constitutions. (*Metropolis Theater Co.* v. *City of Chicago,* 246 Ill. 20.) Section 1 of article 9 of the constitution directs the General Assembly to provide such revenue as may be needful by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property, such value to be ascertained by some person or persons to be

elected or appointed in such manner as the General Assembly shall direct and not otherwise, but the General Assembly shall have power to tax persons engaged in certain occupations, and persons or corporations owning or using franchises or privileges, in such manner as it shall from time to time direct by general law uniform as to the class upon which it operates. The power is limited only by the provision of the constitution as to uniformity, and in the exercise of the power the General Assembly in 1909 saw fit to provide that after an ascertainment of the value of property as required by the constitution, one-third should be taken as the basis for computing taxes and should be called the assessed value, and in 1919 changed the proportion of value to one-half. The General Assembly could increase the rate of taxation by any method it might choose to adopt. There were a great many taxing bodies in the State authorized to levy taxes at certain specified rates, and if the purpose of the General Assembly was to increase the amount of revenue to these taxing bodies, it could as well do it by changing the basis in one act as by changing the rates in a multitude of acts. Neither by constitution or statute is the exercise of the power of taxing limited to July 1, and if an assessment is completed before that time the taxing authorities may thereafter levy such an amount of tax as may then be authorized by law. Considering the amendatory act alone, there would be no possible objection to increasing taxes by that act through the change of basis from one-third to one-half.

The answer alleges that the General Assembly passed sixty-six other acts contemporaneously with the amendatory act reducing the rates of taxation, so that the amount of revenue produced would be the same as before the amendment, and this demonstrates that there was some other purpose in the passage of the amendatory act than increase of taxation. The constitution sets a limit upon the indebtedness which may be incurred by a municipal corporation to

five per cent of the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness. The limit of five per cent must be based on the assessed value for the purposes of taxation, (*City of Chicago* v. *Fishburn,* 189 Ill. 367,) and the General Assembly from time to time has fixed a basis of one-fifth, one-third or one-half of actual value as assessed value. The assessed value is a merely arbitrary portion of the value of property assessed, in connection with the rates authorized to be levied by taxing bodies, for the purpose of producing what the General Assembly may deem a sufficient revenue. The amendatory act, taken with the sixty-six other acts, would merely enlarge the powers of municipalities to incur indebtedness after July 1, 1919, and to that there is no constitutional objection. The General Assembly could change the basis at any time when it might think proper to do so, and no constitutional right of a tax-payer is invaded thereby.

These are the reasons for which the writ of *mandamus* was denied.

*Writ denied.*

FARMER, DUNCAN and THOMPSON, JJ., dissenting:

We are unable to agree with the opinion of the court in this case, and make this brief statement, without argument or elaboration, of the reasons for our disagreement.

We agree with the court that the act amending sections 17 and 18 did not, and was not intended by the legislature to, take effect until July 1, 1919. It clearly was not intended by the legislature, in the passage of the amendatory act, to produce more revenue. The answer truthfully avers that the acts reducing the tax rates correspondingly would, when applied to the increased assessed valuation, produce the same amount of revenue that had been produced before the amendments. At the time the amendment to sections 17 and 18 went into effect, the assessment by the

officers charged with the duty of making the assessment presumably, and we think in fact, had been made in every county in the State, unless that was not so in Cook county. The various provisions of the Revenue act required the completion of the assessment and the return of their books by the assessors to the county clerk on or before July 1. The assessment made by the assessors was a completed act, in compliance with the law then in force, before the amendment became a law. That one county may not have completed the assessment within the time required by law does not, we think, justify holding the assessment was not completed in the other counties. The statute is general in its application, and its binding obligation is not affected by the fact that it had not been complied with in some localities. (*Board of Supervisors* v. *Keady*, 34 Ill. 293.) The reviewing boards provided by the statute to review and correct the assessment made by the assessors are not given, and were not intended to be given, authority to make a new and entirely different assessment of property which had been correctly and lawfully assessed for taxation by the assessors. It is quite true the rate of taxation and basis for assessment of property are subject to change, but we cannot agree that a law changing the basis of assessment, which takes effect after the assessment for that year had been completed, can be made to apply to the assessment for such year. When an assessment is lawfully and correctly made before July 1 on the basis required by the statute, the property owner then has a right which the legislature has no authority to deprive him of by the enactment of a law changing the basis of the assessment, to take effect July 1. When the act amending sections 17 and 18 went into effect, July 1, 1919, the assessment for that year was a completed act, and no act taking effect after the completion of that act could affect or supersede the assessment. Section 4 of the act relating to the construction of statutes (Hurd's Stat. 1917, p. 2846,) provides that no new law shall be construed

to repeal a former law as to any act done, right accrued or claim arising under the former law. This assessment was an "act done" before the new law went into effect, and it seems to us the construction given the new law is directly in violation of our own statute on the subject of statutory construction.