(No. 25617.—)

THE MOBILE AND OHIO RAILROAD COMPANY *et al.* Appellees, *vs.* THE STATE TAX COMMISSION, Appellant.

*Opinion filed June 14, 1940.*

JOHN E. CASSIDY, Attorney General, (MONTGOMERY S. WINNING, of counsel,) for appellant.

DAVID S. LANSDEN, and RUFUS CREEKMORE, for appellees.

Mr. JUSTICE SHAW delivered the opinion of the court:

This is an appeal by the State Tax Commission from a judgment entered by the circuit court of St. Clair county on a statutory appeal from the commission to that court under the provisions of section 10 of the Tax Commission act of 1919 (Ill. Rev. Stat. 1937, chap. 120, par. 347,) now section 138 of the Revenue act of 1939, in the matter of the assessment by the State Tax Commission of the property of the Mobile and Ohio Railroad Company for the year 1938. The record consists of an agreed statement of facts and presents for determination by this court the question of whether the State Tax Commission has used lawful methods and rules in equalizing the valuations of railroad properties in the various counties hereinafter mentioned.

By virtue of a recognized custom, property, generally, throughout the State of Illinois is now, and for many years last past has been, assessed for taxation at a figure less than its full fair cash value and this custom has long been recognized by the State Tax Commission. Prior to 1938, the commission, in assessing property coming under its jurisdiction, determined, first, the full value of such property, and then equalized such full value at that percentage of fair cash value which, in its opinion, represented a State-wide average of the percentages of fair cash value used by local assessing officers in assessing property, and, for the years 1933, 1934, 1935, 1936, and 1937, the commission

determined that the average equalized value of property throughout the State was thirty-seven per cent of the fair cash value thereof. In assessing the property of a railroad company the commission equalized the valuation thereof and divided such equalized value among the several counties and other taxing districts therein through which the lines of the railroad company operated. However, during the years 1936, 1937, and 1938, the State Tax Commission made an investigation of the assessment ratio used in each county of the State and concluded that there was a wide variation among the counties in the percentages of fair cash value at which property was assessed by the local assessing officers. Such percentages were found to range from twenty-four per cent in DuPage county to seventy-eight per cent in Massac county, while the average for all of the counties was thirty-four and one-half per cent.

In view of its conclusions in this behalf the commission decided that the constitutional requirement of uniformity could not be satisfied for the several taxing districts of the State by equalizing railroad valuations for the entire State at one identical percentage, but that the railroad valuations for each county should be equalized at the same percentage of fair cash value as other property is equalized in that county. Consequently, in 1938, the commission adopted the following method of assessing railroad property. It valued the property of each railroad company subject to assessment by it, including the property of the Mobile and Ohio Railroad Company, divided such valuation among the several counties and other taxing districts through which the lines of such railroad company operated, and then equalized the valuation in each county at the percentage of fair cash value used by local assessing officers in equalizing other property in that county.

The appellees contend, and the trial court held, that this method of equalizing the valuation of railroad property violates the Railroad Assessment act of 1937, (Ill. Rev. Stat.

1937, chap. 120, pars. 56.1-56.15,) the uniformity provisions of the State constitution, and the due process and equal protection clauses of the fourteenth amendment to the Federal constitution, and that, regardless of the facts developed by the investigation herein referred to, the method used by the State Tax Commission prior to 1938 is the only legal method of equalizing railroad valuations.

In assessing the property of the Mobile and Ohio Railroad Company, the State Tax Commission, after a hearing, fixed the full value of said property subject to assessment by it for the year 1938, at $3,747,820, concerning which valuation no question is raised. This full value was then divided by the commission among the respective counties and other taxing districts through which the line of railroad operated, and thereupon the full value, as thus divided, was equalized by the State Tax Commission for each county at the average ratio found by the commission to be used by the local assessment officials in such county in assessing other property. The full value of the properties in question, as divided among the several counties, the final assessed value in each county, and the equalization factor or assessment ratio employed for each county are as follows:

| County | Full Value | Assessed Value | Equalization Factor or Assessment Ratio |
|---|---|---|---|
| Alexander | $ 785,629 | $ 518,515 | 66% |
| Jackson | 705,508 | 282,203 | 40% |
| Monroe | 490,755 | 318,991 | 65% |
| Perry | 55,526 | 42,200 | 76% |
| Randolph | 624,947 | 331,222 | 53% |
| St. Clair | 684,843 | 205,453 | 30% |
| Union | 400,612 | 272,416 | 68% |
| Total | $3,747,820 | $1,971,000 | |

The line of the Mobile and Ohio Railroad Company in the State of Illinois extends from Cairo, in Alexander county, to East St. Louis, in St. Clair county, and is located

in and passes through the counties of Alexander, Union, Jackson, Perry, Randolph, Monroe and St. Clair. In these counties the line of said railroad company operates through 166 of the 809 taxing districts located therein.

The investigation conducted by the State Tax Commission tended to show that in most counties of the State rural property was equalized at a higher percentage of its fair cash value than urban property. The respective percentages in the counties through which the line of the Mobile and Ohio Railroad Company operates, and the weighted average assessment ratio for said counties, are as follows:

| Counties | Assessment Ratio for Rural Property | Assessment Ratio for Urban Property | Weighted Average Assessment Ratio |
|---|---|---|---|
| Alexander | 81% | 60% | 66% |
| Jackson | 51 | 33 | 40 |
| Monroe | 70 | 51 | 65 |
| Perry | 91 | 57 | 76 |
| Randolph | 56 | 48 | 53 |
| St. Clair | 41 | 36 | 38 |
| Union | 80 | 49 | 68 |

In 1933, and in each subsequent year to and including 1938, the Governor, the State Auditor, and the State Treasurer, acting pursuant to the laws relating to the levy and extension of State property taxes, met and determined that no rate for State purposes need be levied or extended for that year upon the assessed valuation of property throughout the State, and in each of these years the State Tax Commission, for that reason, did not equalize the assessments of property between the different counties of the State.

The total full value of the properties of all railroads in Illinois subject to assessment by the State Tax Commission for the year 1938, was found by the commission to be $948,615,953, and the total assessments of all such properties within the State of Illinois subject to assessment

by the State Tax Commission was finally fixed by the commission at $346,230,900.

Assessments of capital stock of domestic corporations subject to assessment by the State Tax Commission for the year 1938 were equalized by the commission by the same method and at the same ratio for each county, as were applied in equalizing assessments of railroad property assessed by the commission. The capital stock assessments allocated by the State Tax Commission to each particular county and taxing district were equalized at the same average percentage of full value as was used by the local assessment officials in such county in assessing other property, generally, throughout such county, and deemed by the commission to represent the average percentage of full value at which property in that county was assessed for taxation.

The total full value of the capital stock of all domestic corporations in Illinois subject to assessment by the State Tax Commission for the year 1938 was found by the commission to be $257,913,894, and the total assessments of all such properties within the State of Illinois subject to assessment by the State Tax Commission has been finally fixed by the commission at $84,090,882.

· The circuit court held that the method used by the commission in assessing the operating property of the Mobile and Ohio Railroad Company for the year 1938 was unlawful and not in conformity with the 1937 Railroad Assessment act. It was ordered that the commission reduce the assessed valuation of the property for that year from $1,971,000 to $1,292,998 and that such reduced valuation be divided among the various interested counties and townships in the manner provided by law. The net assessment of $1,292,998 is arrived at by equalizing the full value of the property at that percentage of fair cash value which represents a State-wide average of the percentages used by local assessing officers throughout the State—*i. e.,* thirty-four and one-half per cent of $3,747,820.

The foregoing statement of facts is taken from the brief filed by the Attorney General and the appellees admit it to be correct. To it the appellees add the following facts which are, likewise, not disputed: Under the method of equalization employed by the commission prior to 1938, all property subject to assessment by it was equalized at the same percentage of full value as property, generally, throughout the State; the assessment of each individual railroad was equalized at the same percentage of full value as the assessment of each other railroad, and the assessed value of each railroad was at the same rate per mile in each county through which the road ran.

Under the method of equalization employed by the Commission for 1938, the assessments of railroads, generally, as made by the commission, were at a higher percentage of full value than were the assessments of property, generally, throughout the State, and at a higher percentage of full value than were the assessments, generally, of all property assessed by the commission; the assessments of individual railroads were at different and varying percentages of full value, and the assessed value of each railroad was at different and varying rates per mile in the several counties through which the road ran.

In so far as the assessment of the Mobile and Ohio Railroad Company is concerned, the method employed by the commission for 1938 had the following effect: Its property was assessed at fifty-two and six-tenths per cent of full value, whereas, (a) capital stock of domestic corporations, generally, was assessed by the commission at thirty-two and six-tenths per cent of full value; (b) property of railroads, generally, including the Mobile and Ohio Railroad Company, was assessed by the commission at thirty-six and five-tenths per cent of full value; (c) all property subject to the jurisdiction of the commission was assessed, generally, by the commission, at thirty-five and six-tenths per cent of full value; (d) property, generally, throughout the

State, was assessed at thirty-four and one-half per cent of full value; (e) the distributable property of the Mobile and Ohio Railroad Company was assessed at the following different rates per mile in the various counties:

| County | Assessment per Mile |
| --- | --- |
| Alexander | $10,196 |
| Jackson | 6,179 |
| Monroe | 10,041 |
| Perry | 11,741 |
| Randolph | 8,187 |
| St. Clair | 4,634 |
| Union | 10,505 |

It is conceded by all parties that the constitution, sections 1, 9 and 10 of article 9, requires that taxation on all persons and property shall be uniform within the taxing district levying the same. About this there can be no question and the controversy necessarily limits itself to a determination of whether the State is a taxing district, whether the Railroad Assessment act (Ill. Rev. Stat. 1937, chap. 120, par. 56.1, *et seq.*) is a proper and constitutional implementation of this constitutional requirement and how that act, if constitutional, is to be applied in the present case. The Attorney General, on oral argument of this case, disclaimed any intention to contend that the act is unconstitutional, but indicated rather that it would be so if construed as directed by the circuit court. On the other hand, it is urged by the railroad company that the act not only is constitutional, but that the construction given by the circuit court is the only one that can preserve its validity.

The act in question requires the State Tax Commission annually to assess all property owned or used by railroad companies operating within this State, except non-carrier real estate, and to value it as a unit. It further provides that the total valuations thus arrived at shall be listed and taxed in the several counties, towns, villages, cities and other taxing districts in the proportion that the length of all the track owned or used in such taxing district bears to

the whole length of all the track owned or used in this State. Certain exceptions are made as to station houses, shops, etc., and many other details of procedure are given, but these are the only portions of the act here under consideration.

The provisions of this act must be read and construed with the provisions concerning the general powers and duties of the State Tax Commission, formerly the State Board of Equalization. This act (Ill. Rev. Stat. 1937, chap. 120, par. 355, *et seq.*) confers the power and imposes the duty of State-wide equalization, and specifically divides assessments into several classes, viz., personal property, railroad and telegraph property, lands, town and city lots and the capital and other property of public utilities and of companies and associations which are assessed by the State Tax Commission. The commission is given power, within certain limits, to determine rates in addition to or deduction from the various classes of property in each county. The general object of the act is to secure, as far as possible, that uniformity which the constitution requires.

The enforcement of the uniformity requirements of the constitution is not a new problem in this court nor with the legislature, and it cannot truthfully be said that either branch of government has ever yet arrived at a satisfactory solution. It may be that the ideal is beyond attainment through available human agencies, yet the quest cannot be abandoned either by the legislative or judicial branch of government. The problem is administrative rather than legislative or judicial, and the administrative difficulties have so far proved insurmountable in so far as any exact attainment of the desired end is concerned. The record in this case discloses the wide variations in either the ideas or ideals of the various assessing bodies and persons in the different counties. Making all due allowance for the frailties of human judgment, it is apparent that there remains a sediment of evasion and an avoidance of true valuations. Regardless of the

cause or motivating factors bringing about these great inequalities, it has long been apparent to this court and to the legislature that the nearest approach to that perfection required by the constitution lies in the delegation of power of equalization to some such body as the State Tax Commission. Every one knows that this ideal has not been attained and yet we are compelled to strive for it. Nearly eighty years ago, and under a prior constitution, we recognized the basic essential principle with which the legislative and judicial departments of government were confronted. In *Chicago and Northwestern Railroad Co.* v. *Supervisors of Boone County,* 44 Ill. 240, we said: "If the assessors, regardless of the strict injunction of the law, shall place a value upon property far below its real cash value, and such a practice goes on unchallenged, and is recognized by the authorities having special charge of the revenue of the State, that misconduct must also contain within itself the great and cardinal principle of uniformity."

In another case in the same volume of our Reports, *Supervisors of Bureau County* v. *Chicago, Burlington and Quincy Railroad Co.* 44 Ill. 229, the same tendency toward under-valuation was recognized while the principle of uniformity was enforced to the extent of our powers. In that case we said: "It is an admitted fact on both sides of this controversy, that the property of no one owner in the county of Bureau has been taxed on its real value, and that the per cent added by the board of supervisors to the valuation of the propery of appellees imposes on them a greater proportionate burden than the law requires them to bear. * * * The great and attractive feature of uniformity has been disregarded by the board." Many later cases might be added to illustrate the premise, but to no purpose so far as this opinion is concerned. Enough has been said to illustrate the constant and ancient struggle between the constitutional principle of uniformity and the widely varying attitudes and opinions of local assessors.

The Railroad Assessment act represents a wise and reasonable administrative effort to meet the requirements of the constitution and coördinate the work of the various assessing bodies. It is instantly apparent that, so far as original cost or reproduction value is concerned, two connecting miles of railroad may have extreme variations. One mile may cross a bridge or go through a tunnel costing millions, while the next adjoining mile lies on level ground costing but thousands, and yet neither one would be of any value without the other. This was fully recognized by us in *People* v. *State Board of Equalization,* 205 Ill. 296, and *People* v. *Illinois Northern Railway,* 248 id. 532, where we quoted from the case first cited as follows: "The statute clearly contemplates that the right-of-way of a railroad company, for the purposes of assessment, shall be treated as a unit, and that the assessment of its real estate used for right-of-way· purposes shall be apportioned among all the counties, cities, etc., through which the road runs. * * * This method of assessment has been in force in this State for many years and is equitable and fair. * * * The cost of construction in a particular town or county affords no criterion of the value of that portion of the road, for every mile of the road is equally indispensable to its existence as a whole, and contributes, proportionately, to its principal earnings. * * * The franchise extends to the entire corporate property and it is not possible that it can be divided. It must, if assessed at all, be assessed as an entirety, and this, as we have already shown, may be in connection with the property to which it is attached. * * * A railroad is a unit, and for the purposes of assessment its right of way must be treated as a whole. * * * The track of the road is but one track from one end of it to the other, and except in its use as one track is of little value." This case was followed in *People* v. *Illinois Central Railroad Co.* 307 Ill. 265, wherein we held that the property of a railroad company must be assessed as a unit and upon

no higher valuation for one mile than another. The rightness and justness of these decisions are obvious and are no longer open to question in this court.

The Attorney General insists, however, that the State is no longer a taxing district, but that the matter must be resolved by counties because no State-wide property tax has been levied in Illinois since 1932. It seems to us that this argument defeats itself by its very statement. It is said that in 1933, and each year thereafter, the Governor, State Auditor and State Treasurer have met pursuant to statute and determined that no State-wide property tax should be levied during each of these years. We can conceive of no theory upon which such a meeting might be held, or such a determination made, except by considering the State as a whole to be, what it has always been, a taxing district for State purposes. Pursuant to the very power by which it has been determined in each of these years that no State-wide tax should be levied, it might, with equal force, have been determined that a certain legal rate should be levied. The determination of no levy for the district is no less a decision concerning and binding the district than would have been the determination of a levy with a fixing of its rate.

There is nothing in the briefs to indicate or even hint at any means whereby the principle of uniformity might be maintained for a State-wide tax other than those principles provided and laid down by the Railroad Assessment act. It is our conclusion that the rules which we have heretofore announced in the cases above cited are controlling in this one; that the provisions of that act are well calculated to come as near as human frailties will permit to the ideal of the constitution; that the levying or non-levying of a State-wide tax does not alter the fact that the State is and remains a taxing district, and that the interpretation given to the act and the constitution is correct.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*