(No. 29086.—

THE PEOPLE *ex rel.* D. A. Prindable, County Collector, Appellee, *vs.* UNION ELECTRIC POWER COMPANY, Appellant.

*Opinion filed November 21, 1945—Rehearing denied Jan. 17, 1946.*

POPE & DRIEMEYER, of East St. Louis, for appellant.

LOUIS P. ZERWECK, State's Attorney, FARTHING, FARTHING & FEICKERT, EUGENE H. WIDMAN, LINDAUER & LINDAUER, all of Belleville, and OEHMKE & DUNHAM, and JOHN C. ROBERTS, both of East St. Louis, (PAUL FARTHING, of Belleville, and KEVIN KANE, of East St. Louis, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Plaintiff, the People of the State of Illinois on the relation of the county treasurer and county collector of St. Clair county (appellee,) brought suit in the circuit court of said county against Union Electric Power Company (appellant) to recover the sum of $57,813.60, unpaid taxes extended against the assessed value of the capital stock of said company. An answer was filed contending in effect that its property had been overvalued for tax purposes by applying the debasement figure used by the Department of Revenue instead of that used in St. Clair county. All affirmative allegations in such answer were denied by the plaintiff. A trial upon an agreed statement of facts resulted in a judgment against appellant, who appeals direct to this court as the revenue is involved.

The appellant states in its brief that the issue presented to us for decision is as follows: "The question for decision in this case is clear cut. Appellant was charged with taxes for the year 1943 extended against 54% of the full fair cash value of its capital stock as determined by the Department of Revenue. All real estate and personal property located in the county of St. Clair and in the taxing district in which appellant's principal office is located, and all corporations whose capital stock was subject to assessment by the local assessing officers, have been required to pay taxes extended against 35% only of the full fair cash value of such property."

It is contended such action violates section 1 of article IX of the constitution of the State of Illinois in that it lacks uniformity as required in such section. The section in question reads: "The general assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the general assembly shall direct, and not otherwise; but the general assembly shall have power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, innkeepers, grocery keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, vendors of patents, and persons or corporations owning or using franchises and privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates."

The contention of appellant is that by the provisions of section 1 of article IX appellant is required to pay taxes only in proportion to the value of its property, and that this proportion must be measured against the value of real estate and personal property located in St. Clair county, and the property of all corporations which was subject to

assessment by the local assessing officers; and since the latter class of taxpayers have their fair cash valuation debased 35 per cent the constitutional provision of uniformity is violated by debasing the fair cash value of the capital stock of appellant only 54 per cent by the Department of Revenue.

A multitude of cases involving the construction and application of section 1 of article IX of the constitution, commencing shortly after its adoption and continuing down until a recent date, have been decided. To acquire the proper perspective from which to view and analyze the decisions involving this section of the constitution it seems to us it would be well to first take up and consider the language used, as understood in its common and ordinary sense, and then measure it with the decisions of this court as applied to the separate and several questions there presented and decided.

Closely analyzed, it can be seen there are three general objects which this section accomplishes: (1) The General Assembly shall provide for revenue by levying a tax by valuation, so that every taxpayer shall pay in proportion to the value of his property; (2) the value upon which the tax is levied shall be ascertained by some person or persons elected or appointed as the General Assembly shall direct, and not otherwise; (3) in its discretion the General Assembly shall have the power to tax a number of occupation or privileges, and persons or corporations owning or using franchises and privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates.

If we had no construction of this section of the constitution, and the first clause only, with that part providing for the election of assessing officers, was all it contained, it would appear the requirement of uniformity as to all classes and kinds of property, regardless of their nature, would be necessary. However, it will be noticed under the

last clause of the section the General Assembly may tax peddlers, auctioneers and others by a general law, uniform as to the class upon which it operates. Likewise, the General Assembly may tax corporations owning or using franchises and privileges, in such manner as it may direct by general law, uniform as to the class upon which it operates.

Considering the entire section, then, in levying taxes the General Assembly must do so by valuation that is uniform, provided that as to peddlers, brokers and the others enumerated, and persons or corporations owning or using franchises, they may be divided into classes and taxed by general law, uniform as to the class upon which it operates, thus requiring uniformity within the class, but not necessarily as to property taxed but not classified. It is also to be observed that this section does not require the value of each of the different kinds of property or objects of taxation shall be ascertained and assessed in the same manner, or by the same person. This, we say, is the apparent meaning of this section.

Let us now see if, from an examination of the acts of the legislature or the decisions of this court, a different general understanding can be deduced. The uniformity section of the constitution, almost from the date of its adoption, has been under the consideration of this court. It first came to our attention in 1871 in the case of *Spencer & Gardner* v. *People,* 68 Ill. 510. There, upon application for judgment for unpaid taxes, an attempt was made to raise the question whether the lands of the objector had been assessed too high in proportion, rendering the entire levy void, but the general purpose of section 1 of article IX was said to have respect to the *laws* which should be passed by the legislature for the imposition of taxes, and not the practical working of the laws. Some four years later, in *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561, the whole purpose and object of section 1 of article IX was construed by this court. Substantially

all of the objections which have since been raised to an alleged violation of uniformity were discussed and considered by the court. It is the leading case upon the construction of section 1 of article IX, and has been cited and followed in cases involving uniformity from then until as late as *Mobile and Ohio Railroad Co.* v. *State Tax Com.* 374 Ill. 75.

Among the various questions decided in the *Porter case* was one as to whether the statute providing that a board of equalization shall assess the value of capital stock and corporate franchises was invalid and in violation of the constitution because it provided a different method for assessing them than the assessment of the property of corporations excepted by law from the levy of a capital stock or franchise tax. In that case the language is so precise that it may bear repetition. After first holding the law providing for a board of equalization was a general law, not limited to a particular part of the State, or special in any respect, and that it applied equally to all corporations within the class, we said: "It is not required, as seems to be thought by some of the counsel with whose arguments we have been favored, that the legislature shall, in providing for the taxation of corporations, under the last clause of the section referred to, [sec. 1, art. IX,] designate the precise amount which the corporation shall pay, and that this shall be the same on each corporation without regard to the value of the franchise or privileges enjoyed, nor that such taxation shall be of like character with that which may be imposed on inn keepers and others pursuing the particular vocations named. It is only required that *they shall be taxed in such manner as the General Assembly shall from time to time direct by general law,* and the *only uniformity required is as to the class* upon which such general law shall operate. It is, therefore, left entirely to the legislature to determine whether corporations shall be taxed only on their tangible property,

on the amount of their capital paid in, on the amount of their gross receipts, or, as in the present instance, on the value of their tangible property, and on the fair cash value of their capital stock, including their franchises, over and above the assessed value of their tangible property, subject merely to the limitation that it shall be directed by general law, uniform as to the class upon which it operates."

Upon a diligent examination, so far as we can ascertain, we have never departed from the principle announced in the *Porter case*. A determined effort was made in *Coal Run Coal Co.* v. *Finlen,* 124 Ill. 666, to have us overrule the *Porter case* because, it was claimed, the requirement of the Revenue Act that the capital stock and franchises of corporations organized for pecuniary profit, with the exception of those organized purely for manufacturing purposes, or for printing and publishing of newspapers, or the improving and breeding of stock, be assessed by the State Board of Equalization, was obnoxious to the constitution. Contrary to this contention we adhered to everything we had said in the *Porter case,* and, while commenting that the constitution undoubtedly requires the laws the General Assembly may enact to be general and uniform as to class, we added that it does not prohibit the legislature from classifying corporations for taxation, saying: "We see nothing in the constitution which prohibits the legislature from providing one method for determining the value of the capital stock, including the franchise, of a railroad company, another method for a mining corporation, and still another for manufacturing corporations. We see no clause in the constitution which prohibits the legislature from placing certain specified corporations in one class, and providing a uniform method of assessment for that class, and placing certain other specified corporations in another class, and providing a uniform manner of assessment for that class. There is no language whatever used in the clause of the constitution, which forbids the legisla-

ture from forming a class, and after the class is formed, it is declared that the General Assembly shall have power to tax corporations owning franchises, in such manner as it shall direct. How shall it direct? By general law, uniform as to the class. What object the General Assembly may have had in placing mining corporations in one class for assessment, and corporations organized for manufacturing, printing, or for breeding of stock, in another. class, it is not for us to inquire. So long as the statute does not conflict with the organic law, it will be upheld, whether wise or unwise." Thus we extended and made more specific the holding in the *Porter case,* instead of rejecting it.

In *Ottawa Gas Light and Coke Co.* v. *Downey,* 127 Ill. 201, in a bill for injunction to restrain taxes for want of uniformity, the same objection was made, but we contented ourselves by saying we adhered to, and approved what we had said in the *Porter case,* and in the *Coal Run Coal Co. case.* In *Sterling Gas Co.* v. *Higby,* 134 Ill. 557, a bill in chancery was brought to enjoin the collection of a tax upon capital stock and franchises, as valued by the State Board of Equalization. In that case the plaintiff gave weight to the first clause only in section 1 of article IX, and contended the capital stock and franchises of a corporation were property, subject to taxes upon valuation, and were governed solely by the said first clause of section 1 of article IX; and that no power of imposing a tax, such as a property tax, is conferred by the second clause of said section. After quoting extensively from the *Porter case* we reached the conclusion that the decisions of this court in it, as well as in the *Coal Run Coal Co. case* and the *Ottawa Gas Light and Coke Co. case,* were right both upon principle and authority, and that as the capital stock tax complained of was authorized by a general law, uniform as to the class upon which it operated, it was not . obnoxious to any constitutional provision.

Litigation involving the right of the State Board of Equalization, or other body created by general law, to tax capital stock, including franchises, upon a different basis of valuation than ordinary property, or the right to except corporations from valuation by such board, seems to have subsided until the case of *The Hub* v. *Hanberg,* 211 Ill. 43, where a new distinction was presented, and which was substantially as follows: That the statute providing for valuation by the State Board of Equalization operated only upon a certain class of corporations; that as to such corporations the State board was to ascertain and determine the fair cash value of such capital stock, including the franchises, over and above the value of the tangible property, while as to other corporations, excluded from valuation by the board, the assessment was to be only in like manner as private individuals. It was urged the assessment of capital stock is an assessment which could not be made against individuals, and that an assessment in addition to one which can be made against private individuals who pay no taxes upon a franchise was therefore in violation of the constitution. We there specifically approved and followed the cases we have just cited, and rejected the contention, because, under the constitution, classes for taxation under the last clause of section 1 of article IX may be created by general law uniform as to the class upon which it operates.

It will be observed that in the cases to which we have just referred the assessment of capital stock was made by a body designated as the *State Board of Equalization,* which was created by a law of 1872, and authorized assessment of the capital stock of all domestic corporations. In 1879 the function of assessing the capital stock of corporations organized purely for manufacturing purposes, for printing or publishing newspapers, or for the improvement or breeding of livestock was transferred to the local as-

sessors. And in 1893 corporations organized for the mining and sale of coal were also excluded from those assessed by the State Board of Equalization. And at different times the function of assessment of capital stock, including franchises, has been shifted from time to time from State officials to local assessment officers, and the name of the body assessing capital stock changed from time to time, until at the present time the function is exercised by the Department of Revenue of the State of Illinois under the act of 1939, (Laws of 1939, p. 917,) which excepts from its effect those enumerated corporations in prior years, and a number of others, none of the same class as appellant. However, whether the body designated to assess and value the capital stock, including franchises of corporations, is called the State Board of Equalization, the Tax Commission, or the Revenue Department is immaterial, for the principle involved is identical, and, hence, cases construing any powers exercised by these bodies by virtue of laws enacted in accordance with section 1 of article IX of the constitution are equally applicable.

Possibly, the latest case in which we have followed the principle of uniformity, as construed by this court, is that of *Mobile and Ohio Railroad Co.* v. *State Tax Com.* 374 Ill. 75. In that case the assessment of railroad corporations was involved, and the valuation of railroad companies for taxation was placed in the hands of the Tax Commission, and it was held the valuation fixed by such commission was properly applied throughout the State as one taxing district, and that it was improper and illegal to value its property in the various counties through which the railroad passes on the equalized percentage of valuation used by the local assessing officers; that, on the contrary, the entire State was the taxing district, and the valuation must be fixed by the Tax Commission and apportioned among the several counties on a mileage basis, as provided by statute. While, from a factual standpoint,

the case is dissimilar from the one now before us, the principle is the same, for it was a corporation exercising franchises and privileges, and the manner of its taxation was provided by general law, uniform as to the class upon which it operates, in accord with the last clause of section 1 of article IX of the constitution. Instead of being rejected the holdings of the earlier cases were followed.

We can see but little difference in the contention made by appellant in the present case from those made in the earlier ones, except as to the arguments advanced to support it. Appellant contends the only classification of corporations which the General Assembly has made is for the purpose of prescribing by what officers the assessments of the different types of corporations shall be made. In other words, it has established no uniform class upon which it operates. It cites *The Hub* v. *Hanberg*, 211 Ill. 43, as supporting this proposition. If this case is carefully examined it will be found the quotation made in appellant's brief has application to the proviso of the Revenue Act as it then existed, exempting companies organized for manufacturing purposes or for mining and sale of coal, or for printing or publishing newspapers, or for the improvement and breeding of livestock from capital stock assessment by the State Board of Equalization, the contention being that the tax in that case lacked uniformity because the capital stock of such excepted corporations was required to be assessed the same as property of individuals. We held that the law providing for different assessors for different classes of corporations did not violate the constitutional requirement of uniformity, following the *Porter case,* and others cited above.

If a general law had not been enacted requiring assessment by the Department of Revenue of the capital stock of corporations of the class to which appellant belongs, and it had been placed in that excepted class subject to assessment by the local assessor, appellant's argument would be

plausible, for it is said in *Sterling Gas Co.* v. *Higby,* 134 Ill. 557, if the right to levy a tax upon capital stock is based upon the valuation referred to in the first clause of section 1, its value must be uniform as to all property assessed or valued thereunder, but it was held the principle did not apply in that case because the objector came within a class subject to assessment by the State Board of Equalization, and the effect of the two clauses of section 1 of article IX was precisely defined in the following language: "The first clause of the section lays down the general rule for the levying of taxes, which is 'by valuation, so that every person and corporation shall pay tax in proportion to the value of his, her or its property,' and also states the means by which such valuation is to be ascertained. The second clause begins with the word 'but.' That word is used in an exceptive or adversative sense, and means 'on the contrary,' or 'on the other hand.'" And then follows an earlier decision construing the same provision in the constitution of 1848, holding: "The first clause of the section prescribed the general rule,—that of uniformity and proportion, upon the basis of the actual appraised valuation of all property, which was to govern in the levying of taxes. * * * that the second clause of the section contained an exception, and that the design of the exception was, to enable the legislature to make the burthen of taxation proportionate, by applying a different rule to * * * corporations exercising franchises and privileges, from that applied to individuals generally." So, in applying the section of the present constitution in question it must be understood the first clause refers to property generally and the last clause refers to a class of persons or corporations owning or using franchises or privileges, created by the legislature by a general law which is uniform as to the class upon which it operates.

In *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561, it is distinctly held that the law creat-

ing the State Board of Equalization is a general law, and that it is uniform in its operation. Likewise, in *Coal Run Coal Co.* v. *Finlen,* 124 Ill. 666, it was held the law placing coal mining companies under the jurisdiction of the State Board of Equalization was a general law, and that it created a class.

It is also asserted it was the intention of the General Assembly to insure uniformity of taxation in the enactment of the Revenue Act, and not to prevent uniformity of taxation, and that the value of appellant's property as fixed by the Department of Revenue effects a result contrary to such intention. Since the adoption of this section of the constitution, uniformity has been held to depend upon whether the property taxed comes under the first clause of section 1, or whether it is designated by a general law, uniform as to class, by authority of the last clause of section 1. If it comes under the latter, then it is immaterial whether the valuation fixed by the officer or board designated by the legislature is the same as that fixed by the local assessor, or whether it incorporates different elements. The requirement of the second clause is that it operate uniformly upon the class designated.

It is not contended here that the valuation fixed by the Department of Revenue upon appellant's property does not operate uniformly upon all like enterprises within the State. The only claim is it does not operate uniformly as to other corporations which may come under the first clause of section 1 of article IX, which must be valued by the local assessor. This does not constitute a lack of uniformity under the constitution because, as pointed out repeatedly by this court, the first clause of the section refers to proportionate valuation of property for taxation generally; and the second clause refers to taxation established by general law uniform as to the class upon which it operates, and must come within the enumerated subjects contained in the second clause of said section 1 of article IX. The

property of appellant subjected to the tax here is within that enumeration.

Appellant relies upon certain other cases, none of which, in our opinion, support its contention. We have already referred to the case of *The Hub* v. *Hanberg,* 211 Ill. 43, which, when properly analyzed does not support it. Appellant also refers to *Bachrach* v. *Nelson,* 349 Ill. 579. That case considered the validity of a law providing for the taxation of incomes, and among other reasons held the law invalid because the tax was not assessed according to valuation, or in proportion of one valuation to another. A general review of the previous constructions given section 1 of article IX of the constitution was commented upon, but there is nothing in that case which supports the contention of appellant other than the general rule as to uniformity, which, we have pointed out above, applies in one way to the first clause of section 1 and in a different way by general law to the second clause of section 1. The cases of *People ex rel. Wangelin* v. *Wiggins Ferry Co.* 357 Ill. 173, and *Bistor* v. *McDonough,* 348 Ill. 624, both involve discrimination in assessment by the local assessor, and *People ex rel. Toman* v. *Chicago Union Station Co.* 383 Ill. 153, involved discrimination in valuing tangible property by applying a different debasing factor. No franchise or capital stock tax was involved in any of those cases; the only question in issue being valuation of objector's property upon a different basis than that of other property of like kind, contrary to the first clause of section 1 of article IX. The cases of *People's Gas Light and Coke Co.* v. *Stuckart,* 286 Ill. 164, and *People ex rel. Toman* v. *Pickard,* 377 Ill. 610, simply hold if a debasing factor is used in assessing the valuation of property for taxing purposes such debasing factor must be uniform as to all property coming within the class assessed. There is nothing in either of these cases that holds that property valued under the first clause of section 1 of article IX must

be assessed in the same way as property coming within a class fixed by law under the second clause of section 1, or that the same debasing factor should be used in each of them.

Appellant also lays stress upon the case of *People ex rel. McDonough* v. *Grand Trunk Railroad Co.* 357 Ill. 493. That case arose under the revenue law as it existed in 1930, (Ill. Rev. Stat. 1935, chap. 120, pars. 45-57,) which was materially different from the Revenue Act of 1939. (Ill. Rev. Stat. 1939, chap. 120, pars. 560-571, secs. 79-90.) The principal controversy in the case grew out of the difference in the method of valuation used by the railroad company in filing its schedule from that used by the Tax Commission. The opinion does not disclose the character of the property, whether real property, personal property, or the value of capital stock or franchises, except for the inference that the hearing was had before the Tax Commission. In that case the debasing factor for property in Cook county, subject to local assessment, was 37 per cent, and the debasing factor for property valued by the Tax Commission was 60 per cent. On page 498 of the opinion the court laid down certain principles of law, and reached the conclusion the value of the railroad property fixed by the Tax Commission should be adopted, and the debasing factor should be that of Cook county rather than the State at large, and, as supporting this proposition, cites a number of cases which lay down the general principles of uniformity. We have examined the record and briefs in that case, from which it appears the point was not raised that railroads, under the law then existing, could be classified under a general law uniform in effect, and assessed in a different manner and by different officers than those referred to in the first clause of section 1 of article IX, and not a single case establishing this well-settled principle was cited by either party. Consequently the opinion does not point out that there is a distinction between property assessed and valued under the first clause of section 1, and that valued

in accordance with general laws enacted in pursuance of the second clause of section 1 of article IX of the constitution.

The general principle of uniformity applies to both clauses of section 1 but does not of necessity apply to them in combination. In other words, as to all property assessed and valued under the first clause the ratio must be uniform, whether actual value or debased value is taken. The same principle of uniformity applies to valuations fixed under the last clause of section 1, but the difference between the two is that the General Assembly may as to certain subjects create, by general law, classes of taxpayers, and in such cases the uniformity required must conform to all coming within that class, but need not be uniform in method or amount of assessment with the other classes, or with the property coming under the first clause of section 1 of article IX.

The General Assembly has established machinery for the assessment and valuation of the franchises and capital stock of railroads, telegraph companies, utility companies and other corporations, and has excepted from the operation of such law certain companies, such as manufacturing concerns, those for the printing and publishing of newspapers, or the improvement or breeding of livestock, which latter are left under the jurisdiction of the local assessor. This is no violation of the constitution.

If the statement in the *Grand Trunk Railroad Co.* case is taken to mean the valuation of capital stock by the Department of Revenue must conform to value fixed by a local assessor on a corporation subject to his jurisdiction, then this statement is erroneous, and not in accord with the law. We have never previously so held, nor has it been so applied since, and to the extent that the statement may be so understood it is hereby overruled.

Some space is devoted to a discussion of debasement factors in the application of uniformity, but since no claim is made that the St. Clair county taxing authorities have made an improper application of the debasement factor as

to property assessed by the proper officers of that jurisdiction, and no contention is made that the Revenue Department has applied an improper debasement factor as between appellant and other companies coming within its jurisdiction, it becomes unnecessary to review our holdings upon that question, since it is agreed between the parties the sole question involved is whether the tax against appellant should be applied against a valuation equalling 54 per cent of its actual cash value as spread by the Revenue Department, or 37 per cent, the debasing factor in St. Clair county.

The evidence shows the debasing factors in the several counties range from 20 per cent to 75 per cent, and therefore to place the debased value of 21 per cent of fair market value to a utility in Lake county and 75 per cent in the adjoining county of Cook would indicate a gross and damaging lack of uniformity. The value of the property assessed by the Department of Revenue is created by the privilege of incorporation granted by the State. The utmost inequality in tax burden would be created within the classes subject to valuation by the Department if the debasement figure of the several counties were applied. All real and tangible personal property is subject to the local debasement figure, and the benefit of such rate obtains. The value created by the State is subject to the valuation of its agents, and this we believe is fair in principle and lawful in operation. The method of assessing railroad property uniform in percentage of value throughout the State, and applying the debasement figure used by the Department of Revenue, as required by general law, was sustained in *Mobile and Ohio Railroad Co.* v. *State Tax Com.* 374 Ill. 75. We think that case is in full accord with the principles applied herein, and contrary to that part of the *Grand Trunk Railroad Co. case* holding to the contrary.

It is our conclusion that section 1 of article IX of the constitution permits the General Assembly to establish classes among certain enumerated types of property men-

tioned in said section; that among such classes is the property of corporations who own or use franchises and privileges; that such a general law has been enacted authorizing the taxing of the value of the capital stock and franchises of the appellant company, which law is general in its nature and character, and creates a class within the permissive power granted by the last clause of section 1 of article IX; that there is no requirement that the valuation of such property be uniform with property not subject to assessment by the Tax Commission, and that but for aught appearing in the pleading or proof the same uniform method of valuation has been pursued throughout the State of Illinois, within the classification applying to appellant.

There is some discussion in the briefs about the difference between equalization of taxes and assessment of taxes. Not only does the statute disclose, but we have held, that they are separate functions. (*People* v. *Pickard,* 377 Ill. 610.) Moreover, it is not necessary to point out the difference between the two to determine the question specifically submitted to us for decision.

There is nothing in any of the cases called to our attention which has modified the cases referred to in the early part of the opinion construing section 1 of article IX of the constitution, or changed their effect, except in so far as objects and methods of taxation have been affected by subsequent legislation. There is nothing in the legislation applying to appellant which has changed their effect. Other cases have been ably discussed, but since we have reached the conclusion appellant comes within a class authorized to be created by the General Assembly by a law which is uniform in its operation upon that class, it necessarily follows the judgment of the circuit court of St. Clair county must be, and is, affirmed.

*Judgment affirmed.*