THE BOARD OF REVIEW OF WINNEBAGO COUNTY *et al.*, Plaintiffs-Appellants, *v.* THE PROPERTY TAX APPEAL BOARD OF THE STATE OF ILLINOIS *et al.*, Defendants-Appellees.

Second District No. 78-189

Opinion filed March 19, 1979.

Daniel D. Doyle, State's Attorney, of Rockford (William H. Gates, Assistant State's Attorney, of counsel), for appellants.

William J. Scott, Attorney General, of Springfield, and Elmer C. Rudy, of Williams, McCarthy, Kinley, Rudy & Picha, of Rockford (Gail A. Moreland, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The Board of Review of Winnebago County and its supervisor of assessments (Winnebago) appeal from a judgment which affirmed the decision of the Property Tax Appeal Board of the State of Illinois (P.T.A.B.) which assessed the personal property of 32 corporations for 1975 at 33 1/3% of book value.

It was stipulated before the Administrative Board that the corporations filed personal property tax schedules for the year 1975 showing 50% of book value for their assessed valuation, following instructions given by Winnebago; that the supervisor of assessments reduced the valuation to 40% of book value; that a complaint was filed with Winnebago alleging that the correct assessment should be 33 1/3% of book value, but that Winnebago denied the relief prayed and an appeal was timely filed to the P.T.A.B.

In addition to the stipulation the supervisor of assessments testified that he was aware that on September 3, 1975, Public Act 79-703 became effective and mandated that all assessments be reduced to 33 1/3% of the actual cash value; but that the property was assessed at 40% in order to keep the State multiplier at 1.0. The supervisor testified that it would have been necessary to raise the multiplier to make up for the loss in 1975 revenues over 1974 revenues.

The P.T.A.B. found that the tax assessment should be reduced to 33 1/3% of the fair market value of the personal property. Winnebago sought administrative review in the Circuit Court of Winnebago County which affirmed the findings of the P.T.A.B. and from which this appeal has been taken.

Winnebago contends that the issues are controlled by the provisions defining "fair cash value" at 50% of actual value found in the Revenue Act in effect prior to September 3, 1975 (Ill. Rev. Stat. 1973, ch. 120, par. 482(24)); and not by the amendment providing for 33 1/3% of actual value. We disagree.

■■ It is a well-established doctrine that statutes will not be given retroactive effect absent a clear expression from the legislature to do so. (*Vendo Co. v. Stoner*, 58 Ill. 2d 289, 310 (1974), *cert. denied*, 420 U.S. 975, 43 L. Ed. 2d 655, 95 S. Ct. 1398 (1975); *United States Steel Credit Union v. Knight*, 32 Ill. 2d 138, 142 (1965).) Equally well settled, however, is the

rule that when the language of a statute clearly requires retroactive application it is the duty of the courts to so apply it. *United States Steel Credit Union v. Knight*, 32 Ill. 2d 138, 142 (1965); *People ex rel. Kroner v. Abbott*, 274 Ill. 380, 386-87 (1916).

In the amendatory act defining fair cash value at 33 1/3% of the actual value of the property, the legislature specifically provided:

> "This amendatory Act of 1975 applies to assessments made in 1975 and thereafter, and to taxes payable in 1976 and thereafter." (P.A. 79-703, §2.)

And the legislature further provided that

> "[I]f the amount so ascertained for 1975, 1976 and 1977 results in a reduction of the aggregate reviewed assessment from the aggregate equalized assessed valuations for such county existing for the 1974 assessment year, the Department shall ascertain the amount to be added to or deducted from such aggregate reviewed assessment for 1975 and subsequent assessment years in order to produce an aggregate equalized assessed value equivalent to the aggregate equalized assessed value which existed for the 1974 assessment year * * *." Ill. Rev. Stat. 1977, ch. 120, par. 627.

■■■ The assessment date of the first day of April is unchanged. (Ill. Rev. Stat. 1977, ch. 120, par. 532). While the amendatory act by its terms became effective September 3, 1975, it clearly provided for application to 1975 assessments since the clear language of the statute provided for reduction in the assessed valuation to 33 1/3% for 1975 taxes. The supervisor of assessments had no valid excuse for refusing to comply with the amended law of which he was aware. (See *United States Steel Credit Union v. Knight* (1965), 32 Ill. 2d 138, 142.) We are not persuaded by Winnebago's further argument that the amendatory act cannot be given retroactive effect because it works to divest the taxing bodies of vested rights to tax revenues. The statutes with retroactive effect are, of course, invalid if they impair vested or contractual rights. (*Peoples Store v. McKibbin*, 379 Ill. 148, 152 (1942); *Dobbins v. First National Bank*, 112 Ill. 553 (1884); *In re Ladewig*, 34 Ill. App. 3d 393 (1975).) However, Winnebago cites no authority for the proposition that taxing bodies have a vested right to tax revenues, or that either a taxing body or taxpayer has a vested right in the use of a certain proportion of the actual value of his property as a basis for assessment and in fact the authorities are otherwise. The Illinois Supreme Court in *People ex rel. Campe v. Board of Review*, 290 Ill. 467, 474 (1919), held valid an act which raised the assessed valuation from one-third to one-half of the actual cash value. The law became effective on July 1, 1919, and the taxpayers argued that the assessment of property was complete before July 1, 1919. However, the court noted that the valuation assessment of property for taxation consists

of a series of acts by different taxing authorities with the final act being equalization by the State. It noted "[u]ntil all this has been done the assessment is not complete and the assessed value of property is not finally determined." (290 Ill. 467, 471.) See also *People ex rel. Harding v. Chicago & Northwestern Ry. Co.*, 340 Ill. 102, 108 (1930), holding that subject to constitutional limitations the basis upon which property is assessed for taxation may be changed by the legislature at any time.

■ Here, only the taxpayers' preliminary assessed valuation had been established when the amendatory act became effective. The Board of Review of Winnebago County had not confirmed the assessments with the result that neither the taxpayer nor the taxing body could have relied upon any assessment prior to a final determination of the correct assessed amount. The legislature also made provision for eliminating any decrease in tax revenue caused by the reduction in the assessed valuation. (Ill. Rev. Stat. 1977, ch. 120, par. 627.) The Department of Local Government Affairs was specifically required to raise the multiplier to assure that the assessed valuation did not fall below 1974 figures levels. Winnebago cannot, therefore, complain that the amendatory act divested the taxing bodies of the right to tax revenues under the prior law.

In addition to the principal question, Winnebago has also contended that the decision of the P.T.A.B. was against the manifest weight of the evidence. More specifically Winnebago argues that there was no proof that the book value was the "fair cash value" of the property.

On administrative review the court does not weigh the evidence, but its function is limited to ascertaining whether the decisions of the administrative agency are against the manifest weight of the evidence. (*DeGrazio v. Civil Service Com.*, 31 Ill. 2d 482, 489 (1964).) Findings of the administrative agency are prima facie correct and the court in such case should only determine if those findings are supported by competent evidence. (*Kellogg Switchboard & Supply Corp. v. Department of Revenue*, 14 Ill. 2d 434, 439 (1958).) Here P.T.A.B made specific findings specifying the correct amount based on 33 1/3% of the full cash value of the subject property. And there is no basis for Winnebago's argument that there is no evidence of the fair cash value. Winnebago contends that the computation was made on the basis of "book value" and asks that we take judicial notice that this is lower than fair cash value. P.T.A.B. contends that the issue was not raised below and cannot therefore be raised on appeal. While the record does not contain the complaint and it is therefore impossible to ascertain the scope of the review, we conclude that even if the issue were raised it is clearly without merit.

Kathy J. Kelnhofer, the certified public accountant who prepared the appellees' tax schedules, testified that she entered 50% of the full value of the personal property on the schedules. Mr. Ferguson, the supervisor of

assessments, testified when asked if the forms showed "50-percent of the fair cash value" that they had the 50-percent value on them. Again, on direct examination Mr. Ferguson testified that the schedules were based on his determination of 40 percent of the market value.

The decision of the P.T.A.B. was supported by substantial evidence and was not against the manifest weight of the evidence. We therefore affirm the judgment of the trial court.

Judgment affirmed.

RECHENMACHER and WOODWARD, JJ., concur.