KENNEDY BROTHERS, INC., Plaintiff-Appellant, v. THE PROPERTY TAX APPEAL BOARD, Defendants-Appellees.

Second District No. 2—86—1115

Opinion filed July 9, 1987.

Thomas W. Winkler, of Cohen, Wulfstat, Semer, Leff & Rosenberg, Ltd., of Chicago, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Helen S. Rozenberg, Assistant State's Attorney, of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Kennedy Brothers, Inc., appeals from the judgment of the circuit court of Lake County, on administrative review, affirming the decision of the Property Tax Appeal Board (PTAB) that section 20g—4 of the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, par. 501g—4) did not apply to plaintiff's 1983 property assessment.

Plaintiff raises two issues on appeal: (1) whether section 20g—4 is applicable in determining the 1983 real estate assessment of plaintiff's property, and (2) whether the PTAB acted properly in denying plaintiff tax relief even if section 20g—4 is not applicable.

Plaintiff filed a petition before the Lake County board of review (board) alleging that 48 lots which it owned in Vernon Township were overassessed for the year 1983. Plaintiff argued that the subject property met the requirements of section 20g—4 of the Revenue Act of 1939 (Act), which became effective September 26, 1983, and that the section applied to 1983 assessed valuations, thereby entitling plaintiff to a lower assessed valuation on the property. The board, in a decision

mailed March 8, 1984, determined that there should be no change in the assessed value of plaintiff's property as section 20g—4 should not be implemented until the tax year 1984. The board stated that to implement the section in 1983 would create inequity in assessments between townships resulting in unfair taxation.

On April 11, 1984, plaintiff filed a petition before the PTAB again arguing that section 20g—4 applied to the 1983 assessed valuations. Plaintiff stated that the fair market value of the property was $6,600 per acre, the current fair market value of "open space" land in Lake County which closely approximated "the estimated price such land currently would bring at a fair voluntary sale for use by the buyer for the same purposes for which such land was used when last assessed prior to its platting" as provided by section 20g—4(b) of the Act (Ill. Rev. Stat. 1983, ch. 120, par. 501g—4(b)). Plaintiff requested that the total assessed valuation be reduced from $842,710 to $54,667.

The board filed a letter with the PTAB on July 10, 1984, explaining how its opinion was derived. The board stated that the bill creating section 20g—4 was not signed until September 1983 and that the

> "Board had already concluded about 50% of our work by that time so many of the townships in the County had already been closed and taxpayers in these areas who qualified under this bill did not have the opportunity to request relief. Therefore, this Board concluded that to implement this bill as of Sept., 1983 would create inequity of assessments county wide and result in unfair taxation."

Plaintiff filed a supplemental memorandum with the PTAB on November 9, 1984. Plaintiff again argued the applicability of section 20g—4 and that the fair market value of the property was $6,600 per acre, but also stated that the maximum fair market value was $25,000 per acre. Plaintiff attached an appraisal of the property which determined that $25,000 per acre was the fair market value of the property as of January 1, 1983, assuming the applicability of section 20g—4 and based in part on six recent sales of raw and undeveloped land in Vernon Township. Plaintiff requested that the 1983 assessed valuation be established at $54,667, as previously requested, but that the assessed valuation in no event be established at greater than $209,176, a figure based on the appraiser's determination of the property's fair market value.

The PTAB affirmed the board's decision on November 4, 1985, stating that, although plaintiff and the board stipulated that the subject property conforms to the requirements of the statute, section 20g—4 was intended to first apply to the 1984 assessment year. Spe-

cifically, the PTAB's decision stated that: (1) the date of valuation of the 1983 assessment is January 1, 1983; (2) section 20g—4 was signed into law on September 26, 1983; (3) a statute operates prospectively absent a clear expression of retroactivity; and (4) no clear expression of retroactivity was made in the section of the Act at issue here.

Plaintiff then filed a three-count complaint for administrative review, requesting that its 1983 assessments be revised pursuant to section 20g—4 and arguing for the first time that, even if section 20g—4 does not apply, the assessment of the property was against the manifest weight of the evidence because of the appraisal submitted to the PTAB and because the county imposed an improvements assessment on two of the 48 lots which were vacant and should have had a "zero" improvements assessment. Following a hearing, the circuit court affirmed the PTAB's decision and this appeal followed.

■■■ Plaintiff's first contention is that the PTAB's determination that section 20g—4 of the Act did not apply until the 1984 assessment year is based on an erroneous construction of the statute and should have been reversed by the trial court. Section 20g—4 provides, in pertinent part:

"(a) In all counties containing less than 2,000,000 inhabitants, the platting and subdivision of land into separate lots and the development of such subdivided land with streets, sidewalks, curbs, gutters, sewer, water and utility lines shall not increase the assessed valuation of all or any part of the land so platted and subdivided provided that:

(1) Such land is platted and subdivided in accordance with "An Act to revise the law in relation to plats", approved March 31, 1874, as heretofore or hereafter amended;

(2) Such platting occurs after January 1, 1978; and

(3) At the time of such platting such land is vacant land in excess of 10 acres, or land used for farming or agricultural purposes within the meaning of Section 20a—1.

(b) Except as provided in subsection (c) of this Section, the assessed valuation of land so platted and subdivided shall be determined each year based on the estimated price such land currently would bring at a fair voluntary sale for use by the buyer for the same purposes for which such land was used when last assessed prior to its platting.
* * *

(d) This Section shall apply to assessments made in all counties containing less than 2,000,000 inhabitants on or after the effective date of this amendatory Act of 1983, and shall be im-

plemented for purposes of revision by the applicable provisions of Section 95 and 96 of this Act, as the case may require." (Ill. Rev. Stat. 1983, ch. 120, par. 501g—4.)

The section was effective September 26, 1983.

The statute clearly provides, therefore, that it applies to assessments "made" after September 26, 1983. The board determined that 1983 assessments were "made" prior to that date as "the Board had already concluded about 50% of our work by that time." The PTAB affirmed this decision, finding that the legislature intended section 20g—4 to first apply to 1984 assessments.

A determination by an administrative agency is not to be disturbed upon review unless manifestly against the weight of the evidence. (*Citizens Utilities Co. v. Department of Revenue* (1986), 111 Ill. 2d 32, 47, 488 N.E.2d 984, *Du Page Bank & Trust Co. v. Property Tax Appeal Board* (1986), 151 Ill. App. 3d 624, 627, 502 N.E.2d 1250.) Courts must give substantial weight and deference to the interpretation placed on a statute by the agency charged with its administration and enforcement. (*Airey v. Department of Revenue* (1987), 116 Ill. 2d 528, 536; *Illinois Power Co. v. Illinois Commerce Com.* (1986), 111 Ill. 2d 505, 510-11, 490 N.E.2d 1255.) Those interpretations, while not binding on courts, are considered an informed source in ascertaining the legislative intent because of the agency's experience and expertise. 111 Ill. 2d 505, 511, 490 N.E.2d 1255; *Illinois Consolidated Telephone Co. v. Illinois Commerce Com.* (1983), 95 Ill. 2d 142, 152-53, 447 N.E.2d 295.

Plaintiff argues that revenue acts must be construed strictly against the State and in favor of the taxpayer and that revenue acts which tend to protect the taxpayer must be liberally construed in favor of the taxpayer. Plaintiff's statement of both of these "rules," however, is too broad and, upon examination of these rules of law, neither applies here. It is correct that:

"[t]axing laws are to be strictly construed and they are not to be extended beyond the clear import of the language used. If there is any doubt in their application they will be construed most strongly against the government and in favor of the taxpayer." (*Getto v. City of Chicago* (1979), 77 Ill. 2d 346, 359, 396 N.E.2d 544.)

(*Peoples Gas Light & Coke Co. v. Ames* (1934), 359 Ill. 152, 155, 194 N.E. 260.) This rule obviously applies only when there is doubt as to whether a statute or ordinance imposing or increasing a tax applies to certain taxpayers. (See, *e.g., Getto v. City of Chicago* (1979), 77 Ill. 2d 346, 359, 396 N.E.2d 544.) This is clearly not the issue here.

It is also correct that:

> "[i]n determining the meaning of a grant of power to levy taxes, strict construction will be given to that which is relied upon to confer the power, but construction will be liberal in all that tends to protect the taxpayer." (*People ex rel. Dooley v. New York, Chicago & St. Louis R.R. Co.* (1939), 371 Ill. 522, 524, 21 N.E.2d 760.)

(See also *People ex rel. Ruchty v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (1951), 408 Ill. 480, 486, 97 N.E.2d 463.) There is no issue here regarding a grant of power to levy taxes.

 The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. (*Stewart v. Industrial Com.* (1987), 115 Ill. 2d 337, 341, 504 N.E.2d 84.) In determining that intent, the court may properly consider not only the language used in a statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. (115 Ill. 2d 337, 341, 504 N.E.2d 84.) When a statute is susceptible of two interpretations, as is the case here, it becomes proper to examine sources other than its language for evidence of legislative intent, and the legislative history of the statute in question is, of course, relevant. *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 279, 469 N.E.2d 167; *Mitee Racers, Inc. v. Carnival-Amusement Safety Board* (1987), 152 Ill. App. 3d 812, 817, 504 N.E.2d 1298.

The legislative history here reflects that this legislation was essentially intended to protect real estate developers from rising assessments which result from initial platting and subdividing of farmland. (83d Ill. Gen. Assem., Senate Proceedings, May 24, 1983, at 293.) During the debates it was recognized that the statute would cause a penalty to some local governments because of the lower tax level but that the change would come one plat at a time and only after filing and appropriate action. 83d Ill. Gen. Assem., Senate Proceedings, May 24, 1983, at 293-94.

Keeping in mind, then, the deference to be given to the agency's interpretation of the statute and the legislative intent to not cause an immediate penalty to local governments, we turn to the question of whether section 20g—4 should have been applied to plaintiff's 1983 tax assessments.

Plaintiff argues that the assessment for any assessment year is not "made" until the State applies the State equalization factor, which clearly would have been after September 26, 1983, for the 1983 tax year, citing *People ex rel. Campe v. Board of Review* (1919), 290 Ill. 467, 125 N.E. 274, and *Board of Review v. Property Tax Appeal*

*Board* (1979), 69 Ill. App. 3d 265, 387 N.E.2d 394.

In *People ex rel. Campe v. Board of Review* (1919), 290 Ill. 467, 125 N.E. 274, the supreme court determined that a change in the proportion of the value of property assessed as the basis for taxation from one-third to one-half enacted by the legislature effective July 1, 1919, applied to 1919 taxes. In making this determination the court decided that the assessment of property for 1919 had not been completed before July 1, stating:

> "[f]irst, the assessor or board of assessors ascertains and determines the value of property, and this is followed by a revision by the board of review, which may raise or reduce such value and also make an original assessment of omitted property, and the final act as to such assessments is equalization by the State tax commission, and in addition thereto, original assessments of property of corporations by that commission. Until all this has been done the assessment is not complete and the assessed value of property is not finally determined." (290 Ill. 467, 471, 125 N.E. 274.)

The court also specifically stated, however, that the question of when an assessment is made was not the issue there and was of no importance in making its determination. 290 Ill. 467, 472, 125 N.E. 274.

We similarly determined in *Board of Review v. Property Tax Appeal Board* (1979), 69 Ill. App. 3d 265, 387 N.E.2d 394, that a statute effective September 3, 1975, applied to 1975 taxes. The statute amended the section of the Act defining the fair market value of personal property and changed it from 50% of actual value to 33⅓% of actual value. In that case, however, the statute specifically stated, "[t]his amendatory Act of 1975 applies to assessments made in 1975 and thereafter" (69 Ill. App. 3d 265, 267, 387 N.E.2d 394), and the statute changed the rate at which property was valued, not the actual valuation of the property.

Both cases are factually inapposite to the situation here, as they involved a change in the percentage rate at which the actual value of property was assessed for purposes of taxation and not a change in the way the value of the property is determined. The cases cannot be read to state, as plaintiff urges, that an assessment is not "made" until equalization by the State's Department of Revenue. The supreme court has stated that the equalization of taxes and assessments of taxes are separate functions. (*People ex rel. Prindable v. Union Electric Power Co.* (1945), 392 Ill. 271, 288, 64 N.E.2d 534.) Equalization has nothing to do with the levying of taxes and only equalizes the assessed valuations of property so that taxation will be

uniform for those taxpayers who must pay upon a statewide assessed valuation. (*People ex rel. Ruchty v. Saad* (1952), 411 Ill. 390, 397, 104 N.E.2d 273.) Assessment operates on the local level and equalization operates on a statewide basis, with the Department having no authority to revise or change any individual assessment made by local assessing officers. (*In re Application of Cook County Collector* (1985), 133 Ill. App. 3d 208, 213, 478 N.E.2d 1119; Ill. Rev. Stat. 1983, ch. 120, par. 633.) Clearly, the assessment of plaintiff's property was "made" before equalization by the State.

The board, whose brief has been adopted by the PTAB, maintains that the 1983 tax year assessment date was January 1, 1983, pursuant to section 27a of the Act (Ill. Rev. Stat. 1983, ch. 120, par. 508a) and argues that assessments were therefore "made" as of January 1, 1983.

■ The levy, assessment, and collection of taxes are purely statutory and can be made only as expressly provided by statute. (*People ex rel. Shirk v. Glass* (1956), 9 Ill. 2d 302, 311, 137 N.E.2d 265; *Lake County Board of Review v. Property Tax Appeal Board* (1986), 140 Ill. App. 3d 1042, 1055, 489 N.E.2d 446.) The board is correct that the Act provides that the owner of real property on January 1 is liable for the taxes of that year. (Ill. Rev. Stat. 1983, ch. 120, par. 508a.) A tax lien accrues on real property as of January 1 of the year in which the taxes are levied. (Ill. Rev. Stat. 1983, ch. 120, par. 697.) Also, section 43 of the Act states that the township assessor, in the quadrennial assessment year for each assessment district, actually views and determines the value of each tract or lot of land as of January 1 of that year. (Ill. Rev. Stat. 1983, ch. 120, par. 524.)

■ Taxes are extended based on the assessments listed in the assessment books. (*County of Will v. Will County Board of Review* (1986), 150 Ill. App. 3d 232, 233, 502 N.E.2d 29.) Section 94 of the Act provides that the township assessors in counties under township organization of less than 1 million inhabitants, as is the case here in Lake County, must return the assessment books to the supervisor of assessments before April 15 of the year for which the assessment is made. (Ill. Rev. Stat. 1983, ch. 120, par. 575.) The supervisor of assessments may then make any revisions or corrections as appear to be just (Ill. Rev. Stat. 1983, ch. 120, par. 527) and is then required by section 100 of the Act to return the assessment books to the board of review by the third Monday in June of that year (Ill. Rev. Stat. 1983, ch. 120, par. 581). Both sections require each assessment book to be verified by affidavit stating, in part, that the book contains a full and complete list of all of the real property in the township, assessment

district or county, and that the assessed value is a just and equal assessment of such property. (Ill. Rev. Stat. 1983, ch. 120, pars. 575, 581.) When the supervisor of assessments completes the assessment in the county or assessment district, a complete list of the assessments of real property is published in each year of a quadrennial assessment or, in years other than quadrennial assessments, a list of those assessments changed or added. (Ill. Rev. Stat. 1983, ch. 120, par. 584.) Complaints regarding such assessments must be made to the board of review by September 10 of that year or within 30 days of the date of publication. (Ill. Rev. Stat. 1985, ch. 120, par. 589(4).)

The board of review then assesses all real property subject to assessment which was not assessed by the assessor (Ill. Rev. Stat. 1985, ch. 120, par. 589(1)), changes assessments if necessary (Ill. Rev. Stat. 1985, ch. 120, pars. 589(4), (5)), equalizes the assessments so that all property is assessed at 33⅓% of its fair cash value (Ill. Rev. Stat. 1983, ch. 120, par. 589.1) and publishes any changes in assessments prior to December 31 of the tax year (Ill. Rev. Stat. 1983, ch. 120, pars. 588, 590). The Illinois Department of Revenue then equalizes the assessments. Ill. Rev. Stat. 1983, ch. 120, pars. 611, 627, 630.

■■■ Based on these statutory procedures, we conclude that an assessment was "made" for purposes of section 20g—4 of the Act on January 1, 1983. This is the date when the owner of real property became liable for taxes for that year (Ill. Rev. Stat. 1983, ch. 120, par. 508a), and the value of real property was determined as of that date (Ill. Rev. Stat. 1983, ch. 120, par. 524). This is a uniform date for the assessment of property throughout the State, and there is no indication that section 20g—4 should be applied on a date other than January 1.

Plaintiff also argues, however, that the statement in section 20g—4 that it "shall be implemented for purposes of revision by the applicable provisions of Sections 95 and 96 of this Act, as the case may require" (Ill. Rev. Stat. 1985, ch. 120, par. 501g—4(d)), requires a different result. Plaintiff contends that under section 95, the section applicable to Lake County, the supervisor of assessments was under a legal authority and obligation to change the assessment of the subject property to bring the assessment into conformity with section 20g—4 as the assessments for Vernon Township were not published until December 22, 1983. We do not agree. Section 95 provides, in pertinent part:

> "The supervisor of assessments shall have the same authority as the township or multi-township assessor to assess and to make changes or alterations in the assessment of property, and

shall assess and make such changes or alterations in the assessment of property as though originally made. Such changes by the supervisor of assessments in valuations returned by the township or multi-township assessor shall be noted in a column provided therefor, and no change shall be made in the original figures." Ill. Rev. Stat. 1983, ch. 120, par. 576.

The section merely allows the supervisor of assessments to make changes or alterations in the original assessment of property. As applicable to section 20g—4, it means, in our opinion, that revisions as to assessments under this section are implemented by the supervisor of assessments. It does not change the date when the original assessment is made.

■■■■ Also, a legislative enactment cannot be given retroactive effect in the absence of a clear expression of legislative intent to do so. (*General Motors Corp., Fisher Body Division v. Industrial Com.* (1975), 62 Ill. 2d 106, 111, 338 N.E.2d 561; *Keystone Service Co. v. 5040-60 North Marine Drive Condominium Association* (1987), 153 Ill. App. 3d 220, 223, 505 N.E.2d 1269.) In the absence of express language declaring otherwise, an amendatory act is ordinarily construed as being prospective in its operation. (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 390, 415 N.E.2d 1034.) Further, our State constitution requires that taxes on real property be levied uniformly by valuation. (Ill. Const. 1970, art. IX, sec. 4(a); *Airey v. Department of Revenue* (1987), 116 Ill. 2d 528, 531; *Du Page Bank & Trust Co. v. Property Tax Appeal Board* (1986), 151 Ill. App. 3d 624, 628, 502 N.E.2d 1250.) Our construction of section 20g—4 is consistent with these rules as it does not give the statute the retroactive effect of applying to 1983 tax assessments when it was not effective until September 1983. This construction also promotes uniformity in taxation as varying local procedures could otherwise allow some taxpayers to benefit from section 20g—4 in 1983, but not others.

■■■ Plaintiff also makes the argument that, as the same public act, Public Act 83—837, which added section 20g—4 to the Act also added section 37, which specifically provides that it applied "as of the first day of January immediately following the date of such recording or filing" (Ill. Rev. Stat. 1983, ch. 120, par. 518), the legislature's intention was that section 20g—4 be effective prior to January 1, 1984. This argument is not persuasive. Section 37 was enacted in 1959 and provides for reassessments of acreage property which has been subdivided. It was merely amended by Public Act 83—837 to add the language "[e]xcept as otherwise provided by the provisions of Section 20g—4" to the beginning of the section. (Ill. Rev. Stat. 1983, ch. 120,

par. 518.) The addition of this language to section 37 obviously has no bearing on whether section 20g—4 applies to 1983 assessments.

As further support for its contention regarding the application of section 20g—4 to 1983 assessments, plaintiff informs us that a circuit court in McHenry County in a separate case reached a determination that assessments were not "made" until equalized by the State. Plaintiff concedes, however, that a decision of the circuit court of this State has no precedential value to the appellate court (see *Village of Northbrook v. Cannon* (1978), 61 Ill. App. 3d 315, 322, 377 N.E.2d 1208), and, because of the foregoing analysis, we need not further consider this issue.

■■■ Plaintiff's second argument on appeal is that, even if section 20g—4 is not applicable to its 1983 tax assessment, the assessed valuation should have been lowered because the assessed value of the property was greater than the appraised fair market value of the property and because two lots were assessed as having improvements even though the lots were actually vacant.

A review of the record reveals that the only evidence presented by plaintiff to show the value of its property was the appraisal submitted to the PTAB which specifically stated that the appraisal was based on the assumption that the subject property could meet the conditions outlined in section 20g—4. The appraisal was obviously intended to show the maximum value of the property if section 20g—4 applied.

As previously stated, a determination by an administrative agency will not be disturbed upon review unless contrary to the manifest weight of the evidence. (*Citizens Utilities Co. v. Department of Revenue* (1986), 111 Ill. 2d 32, 47, 488 N.E.2d 984; *Du Page Bank & Trust Co. v. Property Tax Appeal Board* (1986), 151 Ill. App. 3d 624, 627, 502 N.E.2d 1250.) While it is true that the PTAB is not to afford *prima facie* weight to the findings and conclusions of fact made by the board of review (*Mead v. Board of Review* (1986), 143 Ill. App. 3d 1088, 1094, 494 N.E.2d 171) and that a taxpayer seeking review in the PTAB does not have the burden of overcoming any presumption that the assessed valuation was correct (*Commonwealth Edison Co. v. Property Tax Appeal Board* (1984), 102 Ill. 2d 443, 464, 468 N.E.2d 948; *Mead v. Board of Review* (1986), 143 Ill. App. 3d 1088, 1094, 494 N.E.2d 171), the taxpayer does have the burden of proving the issues raised in the complaint. 143 Ill. App. 3d 1088, 1095, 494 N.E.2d 171.

■■ ■ The PTAB is required to base its decision upon equity and the weight of the evidence. (*Commonwealth Edison Co. v. Property Tax Appeal Board* (1984), 102 Ill. 2d 443, 462, 468 N.E.2d 948;

Ill. Rev. Stat. 1983, ch. 120, par. 592.4.) It cannot base its decision upon facts, data and testimony which do not appear in the record, and its findings must be based on evidence introduced in the case. (*Commonwealth Edison Co. v. Property Tax Appeal Board* (1983), 115 Ill. App. 3d 371, 379, 450 N.E.2d 780, *aff'd in part & rev'd in part & remanded* (1984), 102 Ill. 2d 443, 468 N.E.2d 948.) The board is correct in stating that the only evidence before the PTAB as to the value of plaintiff's property without application of section 20g—4 was the board's lists containing the 1983 assessed values of the subject properties. Plaintiff did not submit any evidence of the value of the property except with respect to its fair market value if section 20g—4 applied and submitted no evidence to show that the two lots given improvement assessments were vacant. On this record, the PTAB's decision was not against the manifest weight of the evidence.

For the foregoing reasons the judgment of the circuit court of Lake County is affirmed.

Affirmed.

UNVERZAGT and NASH, JJ., concur.