LAWRENCE F. DIETZ *et al.,* Plaintiffs-Appellees, v. THE PROPERTY TAX APPEAL BOARD, Defendant-Appellant (Board of Review of Jackson County, Defendant).—LAWRENCE F. DIETZ *et al.,* Plaintiffs-Appellees, v. THE PROPERTY TAX APPEAL BOARD, Defendant (Board of Review of Jackson County, Defendant-Appellant).

Fourth District   Nos. 4—89—0070, 4—89—0124 cons.

Opinion filed December 14, 1989.

470

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellant Property Tax Appeal Board.

Charles Grace, State's Attorney, of Murphysboro (Michael L. Wepsiec, Assistant State's Attorney, and Kenneth R. Boyle, Robert J. Biderman, and William P. Ryan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant Board of Review of Jackson County.

Frederic S. Lane and William T. Barker, both of Sonnenschein, Carlin,

Nath & Rosenthal, of Chicago, and Illinois Agricultural Association, of Bloomington (Danny J. Leifel, of counsel), for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

This appeal concerns section 20e of the Revenue Act of 1939 (Act) (Ill. Rev. Stat. 1985, ch. 120, par. 501e). The Jackson County Board of Review (County Board) applied a multiplier to determine the 1985 assessments for property owned by the plaintiffs, Lawrence F. Dietz and Herman W. Dietz. On review, the decision of the County Board was affirmed by the Property Tax Appeal Board (Board), after the Board found the County Board's decision followed the plain meaning of the Act and effectuated legislative intent. On administrative review, the circuit court of Sangamon County reversed the Board, finding its decision to be contrary to the plain meaning of section 20e. For the reasons that follow, we reverse the circuit court and affirm the Board's decision.

Section 20e of the Act dictates that the "increase or decrease in the aggregate equalized assessed value of all farmland in any county" for 1984 and 1985 is held to 10% of the previous year's figures. (Ill. Rev. Stat. 1985, ch. 120, par. 501e.) Plaintiffs are owners of eight parcels of farmland in DeSoto, in Jackson County, Illinois. After Jackson County assessing officials determined the preliminary assessments for 1985, a multiplier of 1.6654 was applied to plaintiffs' parcels after assessing officials determined the 1985 aggregate equalized assessed value for all farmland in Jackson County, $10,293,388, decreased in excess of 10% from the 1984 aggregate assessment, $19,046,521. The 1985 preliminary assessments and those as adjusted by the multiplier are as follows:

|  | Preliminary Assessments | Assessments with Multiplier |
|---|---|---|
| Parcel I | 776 | 1294.00 |
| Parcel II | 172 | 288.00 |
| Parcel III | 1653 | 2754.00 |
| Parcel IV | 722 | 1204.00 |
| Parcel V | 1119 | 1864.00 |
| Parcel VI | 470 | 783.00 |
| Parcel VII | 3217 | 5358.00 |
| Parcel VIII | 886 | 1476.00 |

On January 21, 1986, plaintiffs appealed the assessments to the Board. Multiple parties from different counties raising the same issues joined the plaintiffs' appeal to the Board and agreed to be bound

by the decision of the Board. Plaintiffs argued the County Board compared the wrong figures in determining the 10% limitation. Plaintiffs contended the *proposed* average equalized assessed per-acre figures, as certified by the Department of Revenue (Department) to the County's assessing officials, are compared for the 10% limitation. The provision for these proposed figures is found in subsection (3) of section 20e. Ill. Rev. Stat. 1985, ch. 120, par. 501e(3).

On December 24, 1986, the Board affirmed the decision of the County Board. The Board first compared the figures relied upon by the plaintiffs in determining the percentage change from 1984 to 1985 with the figures relied upon by the Board. The Board considered such figures for each county concerned in the appeal before it. The percentage change from 1984 to 1985 is shown on the following table:

| County | 1984 Average Value Certified by Department | 1985 Average Value Certified by Department | Change |
|---|---|---|---|
| Carroll | 186 | 201 | + 8.1% |
| Cass | 143 | 153 | + 7.0% |
| Clinton | 72 | 74 | + 2.8% |
| Du Page | 176 | 189 | + 7.4% |
| Franklin | 50 | 50 | + 0.0% |
| Iroquois | 183 | 197 | + 7.7% |
| Jackson | 45 | 46 | + 2.2% |
| Jefferson | 48 | 48 | + 0.0% |
| Johnson | 27 | 27 | + 0.0% |
| Macoupin | 168 | 182 | + 8.3% |
| Mason | 107 | 113 | + 5.6% |
| Massac | 64 | 64 | + 0.0% |
| Morgan | 213 | 230 | + 8.0% |
| Scott | 159 | 171 | + 7.5% |
| Shelby | 141 | 150 | + 6.4% |
| Wayne | 66 | 66 | + 0.0% |
| Will | 156 | 168 | + 7.7% |

The average percentage change is +4.6%. The County Board had compared the aggregate equalized assessed valuations for all farmland in Jackson County for 1984 and 1985 to determine whether the increase or decrease was more than 10%. The aggregate figures used were those recorded in the abstracts for Jackson County as the actual assessments upon which taxes were collected. The percentage change from 1984 to 1985 in actual aggregate equalized assessments for each county is as follows:

| County | 1984 Farmland recorded valuations | 1985 Farmland preliminary figures | $ Change | % Change |
|--------|-----------------------------------|-----------------------------------|----------|----------|
| Carroll | 55,193,430 | 39,670,894 | 15,522,536 | - 28% |
| Cass | 35,246,505 | 28,151,674 | 7,094,831 | - 20% |
| Clinton | 25,843,660 | 13,146,188 | 12,697,472 | - 49% |
| Du Page | 8,522,937 | 6,722,169 | 1,800,768 | - 21% |
| Franklin | 18,802,268 | 7,264,889 | 11,537,379 | - 61% |
| Iroquois | 164,138,370 | 119,404,378 | 44,733,992 | - 27% |
| Jackson | 19,046,521 | 10,218,795 | 8,827,726 | - 46% |
| Jefferson | 34,277,389 | 12,282,459 | 21,994,930 | - 64% |
| Johnson | 10,401,055 | 7,591,016 | 2,810,039 | - 27% |
| Macoupin | 84,901,390 | 62,993,761 | 21,907,629 | - 26% |
| Mason | 47,203,230 | 32,622,293 | 14,580,937 | - 31% |
| Massac | 12,724,580 | 6,810,033 | 5,914,547 | - 46% |
| Morgan | 80,187,674 | 77,517,784 | 2,669,890 | - 3% |
| Scott | 24,671,530 | 17,670,425 | 7,001,105 | - 28% |
| Shelby | 73,623,980 | 55,502,809 | 18,121,171 | - 25% |
| Wayne | 48,067,550 | 33,589,519 | 14,478,031 | - 30% |
| Will | 73,624,006 | 59,140,319 | 14,483,687 | - 20% |
| Total | $816,476,075 | $590,299,405 | $226,176,670 | - 28% (avg.) |

The Board concluded the County Board's figures more closely followed the legislative intent as evidenced in the debates concerning Public Act 83—1124. (1984 Ill. Laws 208, eff. June 30, 1984 (amending Ill. Rev. Stat. 1983, ch. 120, par. 501e).) Public Act 83—1124 eliminated the $30-per-acre ceiling for 1982 through 1984 and added the 10% provision at issue in this appeal. The Board noted the legislative debates on Public Act 83—1124 reflected concern for the erosion of the tax bases of local taxing districts caused by the implementation of the 1981 farmland assessment law. The Board stated the debates did not concern *expected* aggregate assessments as proposed by the plaintiffs, but rather focused on the need for stability in fiscal planning for local governments. The County Board's preliminary figures revealed the actual change in aggregate assessments in Jackson County from 1984 to 1985 was 46%, while the plaintiffs' proposed average figures established the change from 1984 to 1985 was only 2.2%.

The Board also found that under plaintiffs' method of determining the 10% limitation, not one of the 17 counties concerned would have to apply a multiplier to the 1985 assessments. The resulting loss of tax base to Jackson County without a multiplier would be $7,877,820.

The loss of tax base for all 17 counties if no multiplier was applied was found to be $226,176,670.

On January 28, 1987, a class action complaint for administrative review was filed in the circuit court for Sangamon County. The complaint was brought by the plaintiffs and the other taxpayers who joined the appeal to the Board. Plaintiffs' claims were severed from the other claims on August 31, 1988, pursuant to section 2—1006 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1006).

The circuit court reversed the Board after reviewing the record and the briefs and hearing oral arguments on November 21, 1988. The circuit court concluded the Board's decision was "contrary to the plain meaning of section 20e."

Section 20e of the Act governs assessment of farmland in Illinois. This section provides:

"§20e. The equalized assessed value of each tract of real property constituting a 'farm,' as defined in Section 1 of this Act, except tracts subject to assessment pursuant to Section 20g of this Act, which has been used as a farm for the two preceding years, shall be determined pursuant to this Section.

The Department of Revenue shall issue guidelines and recommendations for the valuation of farmland pursuant to this Section in order to achieve equitable assessment of farmland within and between counties.

***

By May 1 of each year, the Department of Revenue shall certify to each County Supervisor of Assessments, County Assessor, or Board of Assessors as the case may be (hereafter referred to as chief county assessing official), and to the County Farmland Assessment Review Committee in each county, the following:

(1) The equalized assessed value per acre of harvested cropland by soil productivity index, calculated by the Department from data supplied by the Farmland Assessment Technical Advisory Board ***:

* * *

(2) A proposed average equalized assessed value per acre of cropland for each individual county, weighted by the distribution of soils by productivity index in the county;

(3) A proposed average equalized assessed value per acre for all farmland in each county, weighted (a) to consider the proportions of all farmland acres in said county which are cropland, permanent pasture and other farmland, and (b) to reflect

that cropland shall be valued at the full amount determined in (2) above, permanent pasture shall be valued at ⅓ of its productivity index equalized assessed value as cropland, and other farmland shall be valued at ⅙ of its productivity index equalized assessed value as cropland; and

A County Farmland Assessment Review Committee (hereafter referred to as the Committee) shall be established in each county to advise the chief county assessing official with regard to the interpretation and application of the State-certified farmland assessment recommendations and guidelines and the implementation of this Section in the county. ***

By June 1, 1982 and each year thereafter, each chief county assessing official shall present to the Committee the procedure to be used in that county for implementing the Section and equalized assessed valuations by productivity index to be used in that county for the next assessment year. On or about June 1, the Committee shall hold a public hearing, the subject of which shall be the equalized assessed values of farmland proposed by the chief county assessing official and the implementation of the procedures proposed by the chief county assessing official. ***

Cropland, permanent pasture and other farmland shall be defined according to U.S. Census Bureau definitions in use during the assessment year in question. Cropland shall be assessed in accordance with the equalized assessed value of its soil productivity index as certified by the Department and shall be debased to take into account factors including, but not limited to, slope, drainage, ponding, flooding, and field size and shape. ***
***

*** For 1984 and [1985] *** any increase or decrease in the aggregate equalized assessed value of all farmland in any county shall not exceed 10% of the aggregate equalized assessed value of all farmland in such county for the immediately preceding assessment year as calculated pursuant to subsections (1), (2) and (3) of this Section." (Ill. Rev. Stat. 1985, ch. 120, par. 501e.)

The sole issue presented in this appeal concerns the meaning of a phrase included in section 20e—"aggregate equalized assessed value." The phrase is not defined in the statute. The plaintiffs insist this phrase must be viewed together with the phrase, "as calculated pursuant to subsections (1), (2) and (3) of this section." According to the plaintiffs, when viewed together, the figure "aggregate equalized as-

sessed valuation" may be obtained by multiplying the *proposed average* equalized assessed value per acre for all farmland, as certified by the Department to the County Board (subsection (3)), by the number of acres of farmland in a county. The Board maintains the phrase refers to the aggregate assessed valuation *as recorded* for the preceding year (1984) in the assessor's books. According to the Board, the last phrase of the 10% provision is surplus language.

■■ The primary rule of statutory construction is to ascertain and effectuate the legislature's intent. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277, 469 N.E.2d 167, 171.) In determining legislative intent, the statute must be read as a whole and all relevant parts must be considered. (*People v. Jordan* (1984), 103 Ill. 2d 192, 206, 469 N.E.2d 569, 576.) Terms of a statute not specifically defined must be given their ordinary and popularly understood meaning, but they are also construed with reference to the purposes and objectives of the statute. (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366, 487 N.E.2d 937, 942.) Where a statute is susceptible to two interpretations, it is proper to examine sources other than its language for evidence of legislative intent. (*Logston*, 103 Ill. 2d at 279, 469 N.E.2d at 172.) In this regard, the legislative history of the statute is relevant along with the reason for its enactment, the circumstances that led to its adoption, and the ends to be achieved by the legislation. (*Logston*, 103 Ill. 2d at 279, 469 N.E.2d at 172.) As the supreme court recently stated in *Mulligan v. Joliet Regional Port District* (1988), 123 Ill. 2d 303, 527 N.E.2d 1264:

> "A proper interpretation of a provision cannot simply be based on its language; it must be grounded on the 'nature, objects and the consequences that would result from construing it one way or the other.' " *Mulligan*, 123 Ill. 2d at 313, 527 N.E.2d at 1269, quoting *Carrigan v. Illinois Liquor Control Comm'n* (1960), 19 Ill. 2d 230, 233, 166 N.E.2d 574, 576.

■■ ■ The courts have recognized that interpretations by administrative agencies express an informed source for ascertaining legislative intent (*Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 344-45, 348 N.E.2d 161, 165) and, therefore, substantial deference has been accorded to the interpretation of a statute made by an agency charged with the administration of that statute. (*Airey v. Department of Revenue* (1987), 116 Ill. 2d 528, 536, 508 N.E.2d 1058, 1062.) Where the question presented is "doubtful" or fairly debatable, the administrative interpretation is often controlling. (*Legg v. Illinois Fair Employment Practices Comm'n* (1975), 28 Ill. App. 3d 932, 939, 329 N.E.2d 486, 491, citing *Nye v. Foreman* (1905), 215 Ill. 285, 288, 74 N.E.

140, 141.) A determination by an administrative agency will not be disturbed upon review unless contrary to the manifest weight of the evidence. *Citizens Utility Co. v. Department of Revenue* (1986), 111 Ill. 2d 32, 47, 488 N.E.2d 984, 990; *Kennedy Brothers, Inc. v. Property Tax Appeal Board* (1987), 158 Ill. App. 3d 154, 159, 510 N.E.2d 1275, 1278-79.

The beginning of the analysis of the 10% limitation provision must focus on the two figures which must be within 10% of each other. The figures are stated as "the aggregate equalized assessed value of all farmland in any county" for 1984 and 1985. (Ill. Rev. Stat. 1985, ch. 120, par. 501e.) Initially, we observe that farmland assessments are set by local assessing officials, not by the Department. (Ill. Rev. Stat. 1985, ch. 120, par. 498.) Section 20e provides the Department shall issue guidelines and recommendations for the valuation of farmland to achieve equitable assessment within and between counties. Section 20e further states that the County Farmland Assessment Review Committee (Committee) shall advise the chief county assessing official with regard to the Department's guidelines and assessment recommendations. The chief county assessing official presents the Committee with the *"equalized assessed valuations* by productivity index to be used in that county for the next assessment year." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 120, par. 501e.) If the Committee agrees with the valuations, the chief county assessing official "shall proceed with the farmland assessment process." (Ill. Rev. Stat. 1985, ch. 120, par. 501e.) Thus, it is clear county assessments *are determined* by local assessing officials, utilizing the productivity index figures certified by the Department. Ill. Rev. Stat. 1987, ch. 120, par. 501e(1).

On its face, section 20e does not dictate that an assessment is calculated pursuant to subsections (2) and (3) of section 20e. Subsections (2) and (3) refer to proposed averages certified by the Department to the counties and are part of the Department's "guidelines and recommendations." However, additional guidelines issued by the Department in a publication known as the Illinois Real Property Appraisal Manual (1988) (Manual) establish the recommended procedure to be used on the local level to achieve equalized assessments for farmland. This court may take judicial notice of this publication as a public record (*Finish Line Express, Inc. v. City of Chicago* (1978), 72 Ill. 2d 131, 135-36, 379 N.E.2d 290, 291; Ill. Rev. Stat. 1987, ch. 116, par. 43.103); and we elect to do so in this case, given its relevance to the issue before us and despite the fact the Manual was apparently not relied upon by the parties or the Board in the proceedings below. *Ru-*

*ral Electric Convenience Cooperative Co. v. Illinois Commerce Comm'n* (1983), 118 Ill. App. 3d 647, 651, 454 N.E.2d 1200, 1202.

In their briefs and at oral argument, the parties argued the local assessment procedure includes merely taking the certified soil productivity figures (subsection (1) of section 20e) and debasing these figures for slope and erosion, *et cetera,* to arrive at the equalized assessed value for a parcel of farmland. On the contrary, the process of assessing farmland is more complex. The guidelines in the Manual set out an eight-step procedure, which includes calculating a *weighted average* productivity index figure for each category of farmland (cropland, pasture, other farmland). This figure is similar to the proposed figure certified by the Department and referred to in subsection (2) of section 20e. The weighted average productivity index figure, calculated locally for each category of farmland, is then used to determine the equalized assessed value per acre for each type of farmland in the county. Thus, the Manual establishes that the equalized assessed valuations are calculated by local assessing officials in accordance with subsections (1), (2), and (3) of section 20e.

Contrary to the Board's argument, the language "as calculated pursuant to subsections (1), (2), and (3)" is not meaningless and, therefore, must not be omitted in determining the intent behind the 10% limitation provision. As stated, the proposed averages certified by the Department in subsection (2) and (3) are not adopted locally, as suggested by the plaintiffs, as the weighted averages, but are used as guidelines. Indeed, the Department's regulations establish this fact. In providing procedures for the review of farmland assessments, the regulations state:

"(c) * * *

(2) The crop and farmland expected averages certified by the Department are based upon soil types identified within the counties, as well as farmland use. These averages serve as guidelines or starting points for helping the Department evaluate farmland assessment compliance. The Department recognizes that in some instances basic compliance with the Department's assessed values and procedures may result in substantial deviation from the expected averages as certified." (86 Ill. Adm. Code §110.165(c)(2), at 10593 (1985).)

Whether the *actual* aggregate equalized assessed values for 1984 are compared with the *actual* preliminary aggregate equalized assessed values for 1985 remains to be determined. The legislative debates and the practice recommended by the Department provide some guidance.

The legislative debates on the bill adding the 10% limitation estab-

lish the intent behind the provision was to preserve the tax bases of the counties hard hit by the farmland assessment law. The legislative history of Public Act 83—1124 reveals the legislators were concerned with the rise and fall of farmland assessments. Identified in the debates is Senate Bill 1462 (83d Ill. Gen. Assem., Senate Bill 1462, 1984 Sess.), the bill's sponsor, Senator Maitland, introduced the bill on third reading as follows:

"Senate Bill 1462 is *** an attempt to address what has become a very serious problem in many of our school districts in the State, especially in those school districts where a preponderance of the property comes from *** farm land. As you know, we passed the farm land assessment bill in 1977 and dramatically changed the bill in 1981, and the farm land assessment bill is doing exactly what it was designed to do, it's working accurately and properly. As a matter of fact, it's probably the most accurate way of assessing property that we have in the State, but I guess one might say it's working a bit too well in that *** during these years of declining farm income, and for those of you who aren't aware of it, farm land income has dropped dramatically the last two or three years. As a consequence of this, the assessment in those rural school districts has dropped dramatically also, and those same school districts, I am sure you are aware, get very little State aid and has created a tremendous burden on many rural school districts. Over the past year, *** we have been working to try to devise a way in which we can stabilize, if you will, the rise and fall of assessed valuation of farm land. Senate Bill 1462 is an attempt to do that. It will limit for 1984 and beyond the rise or fall of the assessed valuation of farm land in the county by no more than ten percent. We think this is a *** a good approach, keeping in mind that some school districts stood to lose twenty-five, thirty, thirty-five percent of their assessed valuation. This is an attempt to resolve that problem." (83d Ill. Gen. Assem., Senate Proceedings, May 22, 1984, at 65-66 (statements of Senator Maitland).)

In the House, Representative Pierce's comments were similar to Senator Maitland's:

"I am convinced of the necessity of this legislation because farm land values have been falling, especially when we look at the past years that we use. And the only way to protect the schools in the rural areas and local government units in the rural areas is to put this 10% floor on reduction in assessed valu-

ation. Four or five years from now, when hopefully farm values are booming again in Illinois and zooming up, some future legislators may want to remove the 10% limitation in order to get back their assessed valuation in their school districts and their local government units. *** It protects the school children of the state in our rural areas. It protects local government units in our rural areas from erosion of their tax base, and it minimizes the extreme effects that the farm land assessment bill has had on reduced assessments due to the loss of productivity on our farms." 83d Ill. Gen. Assem., House Proceedings, June 14, 1984, at 9 (statements of Representative Pierce).

■ The plaintiffs strenuously urge resort to the legislative debates is unnecessary because the language of section 20e is unambiguous: It directs the comparison of the Department's certified values. Moreover, plaintiffs urge these proposed average figures effectuate legislative intent because these figures represent real changes in farmland values from year to year. Plaintiffs' position is not tenable. The Department's certified figures are *not* equalized assessed values for farmland in any county, but are used in the process of calculating the equalized assessed values. Additionally, plaintiffs read the word "aggregate" out of the 10% provision and offer no logical explanation for disregarding it. Plaintiffs are correct that the 10% provision does not include the word "actual" before the term "aggregate." However, the plaintiffs repeatedly stress the Department's proposed figures should be compared. There is no evidence in the statute, its legislative history, or the Department's publications that this was intended.

The Board submits the Department and all county boards agree that the actual aggregate assessed valuations for 1984 and 1985 are compared to determine the 10% limitation. A publication issued by the Department in 1986, Farmland Assessment Law of 1981 (1986), and made part of the record before us, establishes the Department directs county assessing officials to use the actual, aggregate assessments for 1984 and 1985. Moreover, in this publication, the Department rejected the very argument plaintiffs present to this court, in large part because of the significant loss of tax base that would result in many counties if certified values were used.

■ Additionally, we find, as did the Board, that other provisions in section 20e evidence an intent that the *actual* figures should be compared. Specifically, in computing the 1984 assessment figures, section 20e provides:

"In order to attain the limitation set forth in the following paragraph, for the 1984 assessments only, the Department shall

certify to each Board of Review or Board of Appeals a factor to be multiplied times the 1983 *actual* equalized assessed valuation of each parcel of farmland within the county as determined in accordance with this Section prior to enactment of this amendatory Act of 1984. That factor shall be the quotient of the proposed county average equalized assessed value per acre for the county weighted as prescribed in (3) above in this section divided by the 1983 *actual* average equalized assessed valuation per acre of farmland in that county." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 120, par. 501e.)

Likewise, for the 1986 and 1987 assessment years, the 10% limitation on a county basis was eliminated and substituted with a 10% decrease provision on a taxing district basis. This provision further evidences the intent of the legislature, as expressed in the debates on Public Act 83—1124, to preserve the tax base for local school districts and taxing districts. It provides as follows:

"For the 1986 and 1987 assessment years, the equalized assessed values certified by the Department as provided in subsection (1)(c) of this section for the 1986 assessment year shall be used by local assessing officials, without limitation as to the increase or decrease in the aggregate equalized assessed valuation of farmland in the county. However, if there is more than a 10% decrease in the 1986 aggregate equalized assessed value of property in any taxing district from the aggregate equalized assessed value of property in such taxing district for the 1985 assessment year due to loss in the aggregate equalized assessed value of farmland, a sum equal to the amount of taxes not received by such district because of the decrease in its aggregate equalized assessed value of farmland in excess of 10% of its total aggregate equalized assessed value from 1985 shall be paid to such taxing district by either the State Board of Education with respect to school districts or the Department of Revenue with respect to other taxing districts." Ill. Rev. Stat. 1987, ch. 120, par. 501e.

■ In further support of their position, plaintiffs argue the Board's method of comparing actual aggregate equalized assessed values for 1984 and 1985 wholly fails to take into account changes in land use from year to year. Specifically, plaintiffs suggest farmland developed for commercial use results in a *drop* in aggregate farmland values while at the same time it causes an *increase* in the county-wide assessed value of commercial land. Thus, there appears to be a decrease in farmland assessments when, in fact, no such decrease exists.

Plaintiffs maintain using the proposed averages certified by the Department avoids this result where a single acreage figure for both years is multiplied alternately by the averages certified each year. Such a calculation would yield the "true" increase or decrease in aggregate assessments for the farmland. The Board counters the plaintiffs' argument by stating that full implementation of use-value assessments was contemplated for 1986, not 1985.

Plaintiffs' argument on change in use of land is flawed. The Department's regulations demonstrate the certified figures are guidelines and substantial deviations from these figures may result in the assessment process. Thus, the use of certified figures cannot give a "true" representation of increases and decreases in aggregate assessments. Further, we reject the possibility plaintiffs suggest: that any change of use of property is not taken into account under the Board's approach. The 1986 publication states before comparing the 1984 and 1985 figures, the aggregate farmland equalized assessed values are *adjusted* to reflect additions or deletions of farmland from year to year.

■ We find the decision of the Board follows the expressed intent of the legislature in enacting section 20e. Taxes are extended based on the assessments listed in the assessment books. (*Kennedy Brothers*, 158 Ill. App. 3d at 162, 510 N.E.2d at 1281; *County of Will v. Will County Board of Review* (1986), 150 Ill. App. 3d 232, 233, 502 N.E.2d 29, 30.) The loss of tax base for 1985 to Jackson County, without the application of a multiplier, would be close to $8 million. Moreover, in Jackson County, the certified figures for 1985 bear little relation to the actual assessment figures. The proposed average equalized assessed value per acre for all farmland in this county was certified at $46. The actual figures before application of the multiplier placed this figure at $36.97. Despite the apparent inequities which may have resulted in these assessment years, the fact remains that there is nothing in legislative history or the statute itself to support plaintiffs' position for the assessment years in question.

Accordingly, we reverse the circuit court of Sangamon County and affirm the decision of the Board and the County Board to apply a multiplier for the 1985 assessments.

Circuit court reversed; Board affirmed.

GREEN and STEIGMANN, JJ., concur.